J. Alexander Brawner, Terre-Tenant of Lyne Shackelford *vs.* Thomas C. Watkins, Francis D. Dungan and George J. R. Waesche.

*Judgment Lien — When a Judgment Creditor is bound to seek Payment out of the proceeds of the sale of the land of his Debtor, in the hands of a Trustee — When the Payment of a Mortgage debt will not operate as an Extinguishment and Satisfaction of the Mortgage.*

On the 26th of October, 1850, A. executed a mortgage to B., to secure the payment of a promissory note. On the 6th of May, 1853, the mortgagee obtained a decree for the sale of the mortgaged premises, to pay a balance then due on the note. Subsequently A., upon his note, endorsed by C., borrowed money and discharged the indebtedness to B., C. had the decree entered to his use as security for his endorsement: and on the 13th of December, 1853, A., as a further security, executed to him a mortgage of the same property. In February, 1853, D. recovered a judgment against A., who, in March, 1854, died intestate. In June following, a creditors' bill was filed against the administrator and heirs at law of the intestate, for the sale of the real estate, alleging insufficiency of personal assets. C. appeared and answered, setting forth the decree entered to his use, as also the mortgage of December, 1853. To this proceeding, D., the judgment creditor, was not a party. A decree was obtained and the property sold; the sale was finally ratified, notice given in the usual way to creditors to file their claims, and the purchase money was regularly distributed under an audit, and a surplus which

remained was paid over to the heirs of the intestate. This case and the one instituted by B. were consolidated. In April, 1861, D. sued out a writ of *scire facias* upon his judgment. The original purchaser assigned his interest in the land to E. HELD:

1st. That D. was bound to seek payment of his judgment out of the proceeds of the sale of the land in the hands of the trustee, and could not enforce his judgment against the land itself.

2d. That the payment of the original mortgage debt, was not under the circumstances of the case a satisfaction and extinguishment of the mortgage and decree.

APPEAL from the Circuit Court for Charles County.

The facts of the case are sufficiently stated in the opinion of this Court.

At the trial below the plaintiffs offered the following prayer:

That the lien of the judgment in the *scire facias* mentioned, on the lands and premises, has not been extinguished or cleared by the evidence offered on the part of the defendant.

And the defendant asked the following instruction:

That the plaintiffs are not entitled to recover in this case against the defendant, J. Alexander Brawner, if the jury shall find that said Brawner is in possession of the real estate in the *scire facias* mentioned in this case, by virtue of a sale made by George Brent, trustee, to P. Davis, in virtue of the legal proceedings on the equity side of the Circuit Court for Charles county, and given in evidence in this case, and that said P. Davis became the purchaser of said real estate, complied with the terms of sale, and that said sale was ratified and confirmed, and the purchase money paid by said Davis.

The Court (FORD, Special Judge) granted the prayer of the plaintiffs and rejected that of the defendant; to this ruling the defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before BARTOL, C. J., GRASON, MILLER and ALVEY, J.

---

Brawner *vs.* Watkins, *et al.*

---

*John P. Poe* and *Peter W. Crain*, for the appellant.

The mortgage to Gwyn, Reid & Taylor was executed by Shackelford, in October, 1850, and became a lien from that date. The decree obtained upon this mortgage, in May, 1853, did not abolish, abridge or modify its lien upon the land in question, in the meantime, but was merely a judicial ascertainment of its extent, and one of the remedies for its enforcement; hence a judgment obtained in February, 1853, upon a simple contract debt, did not become senior to the lien held by the owner of the decree, but junior, and, in law, subsequent, for the plain reason that the mortgage was senior and prior. Therefore the holders of the decree have rights prior and paramount to those of the junior judgment creditors, and the title of the purchaser at the trustee's sale, is also prior and paramount to the lien of their judgment. *Alderson vs. Ames & Day*, 6 *Md. Rep.*, 52.

The title which is attacked by the writ of *scire facias* in this case, is that of a purchaser at a judicial sale, who. has fully and in good faith complied with all the terms of sale, and paid the whole purchase money, in total ignorance of any cloud or difficulty. The principle of law applicable to such cases, is well settled in Maryland and elsewhere. In *Elliott's Lessee vs. Knott*, 14 *Md. Rep.*, 134, 135, the rule is laid down "that Courts of *justice will guard and maintain with jealous vigilance, the titles of purchasers, acquired under judicial sales.*"

Especially will this principle be enforced in a case where the purchaser has paid the entire purchase money, and the attempt is made to compel a second payment, at the instance of a creditor, the former owner of the land sold, who, by gross negligence, has failed to collect his claim. The original mortgagees held the legal estate in the property in question at the time of the recovery of the judgment of the appellees, consequently, all that was bound by that judgment was an equity of redemption. *Jamieson vs. Bruce*, 6 *G & J.*, 72; *Evans and Iglehart vs. Merriken*, 8 *G & J.*, 46; *McElderry vs. Smith*, 2 *Har. & Johns.*, 72.

A decree was obtained in May, 1853, upon this senior lien by the mortgagees, Gwyn, Reid & Taylor, for a sale of the property to discharge it. Thompson, Stewart and Mathews, however, by coming forward and paying to these senior lien-holders their debt, and obtaining an assignment of such decree, by having it entered to their use, were substituted in the place of these senior lien-holders, and became entitled to all the rights which they enjoyed. In other words, the legal title to the property became vested in them to the same extent as it had been held by Gwyn, Reid &, Taylor. The prayer of the bill filed by Mills is, that the trustees in the original case of *Gwyn, Reid & Taylor vs. Shackelford,* shall sell the land. The appellant deduces title under a sale made in pursuance of a decree, regular in all respects, passed in a cause to which the holders of the legal estate, the heirs of the deceased, and his personal representative, were parties. It would seem to be too clear for argument, therefore, that as the decree authorized a sale of the interest of all the parties to the suit, and some of those parties held the legal title, the purchaser acquired that legal title to the same extent as those parties held it. In other words, the legal title as held by Gwyn, Reid & Taylor, in October, 1850, and by Thompson, Stewart and Mathews, in May, 1853, devolved upon P. Davis, the purchaser at the trustee's sale, on the 6th December, 1855, and is now held by the appellant as purchaser from Davis.

Can the purchaser of this legal title set it up as against a *junior* judgment creditor not a party to the cause in which the decree for sale was passed? Upon principle this question would seem of easy answer. The purchaser of a legal title from a party holding it, ought certainly to have the right to rely on it as against a subsequent and inferior incumbrancer. Ordinarily, all incumbrancers, whether prior or subsequent, are made parties to proceedings which look to a sale of the incumbered property. But we have yet to see any decision in Maryland that subsequent incumbrancers are necessary to enable the purchaser to acquire the whole

title. A mortgagee holding the legal title or a senior judgment creditor, can compel junior incumbrancers to unite in the sale, and when the property is sold at the instance of the former, the latter are remitted to the proceeds of sale; and even then only to the surplus after discharging the elder lien. When, however, junior incumbrancers take the initiative, the rule is otherwise, and for the plain reason that the holder of a mere equity cannot put an end to a title paramount, such for example as that of a *senior mortgagee*, without his consent or participation. The distinction would seem to be obvious, and to rest upon the soundest principles. It is moreover abundantly sustained by authority. *Delabere vs. Norwood,* 3 *Swanston,* 144; *Rose vs. Page,* 2 *Simons'* 471, *and cases referred to in Hagan vs. Walker, et al.,* 14 *Howard,* 37; *Warren vs. Twilley,* 10 *Md. Rep.,* 51.

Senior mortgagees or senior judgment creditors cannot be deprived of their legal advantages without their consent; but it by no means follows that the existence of subsequent incumbrancers disables them from asserting and realizing the benefit of their priority, without consulting such subsequent incumbrancers. Indeed, it is familiar practice that the purchaser at a sale under a *fieri facias* sued out upon a senior judgment, acquires title without reference to the existence of junior judgment creditors. These are required to resort to the surplus remaining in the hands of the sheriff after payment of the first judgment, and have no right to follow the land in the hands of the purchaser. Why a different and less reasonable rule should prevail in equity where the sale is made by a trustee under a decree obtained by the senior lienor and holder of the legal title, it is difficult to perceive. In each case the purchaser should acquire the whole title. *Nesbitt vs. Dallam,* 7 *Gill & Johns.,* 513.

In *Murphy vs. Cord,* 12 *Gill & Johns.,* 182, it was decided that a mortgagee whose mortgage was subsequent to a judgment against the mortgagor, could not maintain ejectment against a purchaser at a sheriff's sale under a *fieri facias* sued

out by the prior judgment creditor, though such creditor had occasion to revive his judgment by *scire facias*, and had not made the mortgagee a party thereto. The legal title acquired by the purchaser from the sheriff was allowed to prevail against the subsequent lien of a mortgage. We ask the same rule applied here.

The attention of the Court is invited to *Story on Equity Pleadings*, ch. IV., sec. 99, *and seq.*, and also to *Calvert on Parties to suits in Equity*, 128–138, where the whole subject as to the necessity of making subsequent incumbrancers parties, is fully discussed upon principle and authority, and the conclusion is arrived at that while it is proper ordinarily to make them parties, they are not necessarily such.

Under the provisions of the Act of 1802, ch. 101, sec. 8, the judgment of the appellees was barred by their failure to file their claim. And further, if not thus barred, the junior lien of their judgment was extinguished by the sale to P. Davis.

The bill in this case was filed under the Act of 1785, ch. 72, sec. 5. It does not provide upon its face for the coming in of other creditors, to participate in the burdens and benefits of the suit. Nor is it necessary that it should. Without such a provision it may be treated as a creditors' bill in the decree and other proceedings founded upon it. *Gibson, et al. vs. McCormick*, 10 *Gill & Johns.*, 65.

Under this Act the Chancellor is authorized, upon the application of any creditor of a deceased debtor, and the averment and proof of the exhaustion of the debtor's personal estate, to decree a sale of his real estate for the payment of his debts. To such a suit all incumbrancers, whether subsequent or prior, *may* be made parties defendant. But while they may be proper, they are not *necessary* parties. The only parties who are necessary under the Act, are the heirs-at-law and personal representatives of the deceased. In the case under examination, the senior mortgagees—the heirs-at-law and personal representative—were made defendants, and the decree passed in the usual form directing a sale of the land.

A junior incumbrancer, a judgment creditor, not made a party to the suit, who failed to obey the order accompanying the decree and forming part of it, after the lapse of several years, comes forward and claims the right to subject the land a second time to sale, in order to realize his debt.

In South Carolina, Tennessee, Wisconsin and Vermont, where judgments are liens upon the defendant's real estate, as with us, no such claim is allowed. *Felder vs. Murphy,* 2 *Rich. Eq.,* 58; *Mims vs. Mims,* 1 *Hump.,* 425; *Person vs. Merrick,* 5 *Wisc.,* 231; *Downer vs. Fox, et al.,* 20 *Vermt.,* 388.

And on behalf of the appellant it is insisted that no such claim can be allowed here.

*Frederick Stone* and *Thomas G. Pratt,* for the appellees, insisted:

1st. That the case of Gwyn, Reid & Taylor, was not consolidated with the case of Mills, but on the contrary, that such consolidation was not prayed for by Mills in his petition asking leave to file his amended bill; that it was not authorised by the order of the Court passed on that petition; and that the decree under which the land was sold, was the decree passed in the case of Mills, to which the appellees were not parties, and which upon its face only authorised the sale, and conveyance to the purchaser, of *the interest* of the *parties to the suit.*

2d. That the judgment of the appellees in Charles county Court, was a lien upon all the lands of the defendant, Shackelford, *lying in that county;* and that whereas in this case there has been a sale under a decree of the Court of Chancery, the judgment creditor, not a party to the suit, is not bound to seek payment out of the proceeds of the sale of the land in the hands of the trustee, but may prosecute his lien against the property after its conveyance to the purchaser. *Duvall vs. Speed,* 1 *Md. Ch. Dec.,* 229; *Ridgely vs. Gartrell,* 3 *H. & McH.,* 449; *Farmers' Bank vs. Heighe,* 3 *Md. Rep.,* 357; *Brooke vs. Brooke, et al.,* 12 *G. & J.,* 318; *Miller vs. Baker,* 1 *Bland.,* 247, *note; Ellicott vs. Ellicott,* 6 *G. & J.,* 48.

GRASON, J., delivered the opinion of this Court.

On the 26th October, 1850, Lyne Shackelford executed a mortgage to Gwyn, Reid & Taylor, to secure the payment of his note to them for $2,364.37. On the 6th May, 1853, they obtained a decree, on the equity side of the Circuit Court for Charles county, for the sale of the mortgaged premises for the sum of $1,583.77, the balance then due upon the mortgage. Subsequently to the date of the decree, Thompson, Stewart and Mathews endorsed a note for Shackleford to Walter Mitchell for the sum of $1,750, and with the money thus raised, Shackelford's indebtedness to Gwyn, Reid & Taylor was paid, and the mortgage and decree were assigned to Thompson, Stewart and Mathews, for the purpose of securing and indemnifying them as such endorsers; and on the 13th December, 1853, Shackelford executed a mortgage to them of the same premises, for the purpose of fully securing and indemnifying them against their liability as said indorsers; in which mortgage the assignment of the previous mortgage and decree to them for the same purpose is recited. At the February Term, 1853, of the Circuit Court for Charles county, the appellees obtained a judgment against Lyne Shackelford for the sum of $396.59. In March, 1854, Shackelford died intestate, and on the 26th June, following, William P. Mills filed a creditors' bill against his administrator and heirs-at-law, for the sale of his real estate for the payment of his debts, on the ground that his personal estate was insufficient for that purpose. Thompson, Stewart and Mathews not having been made parties to the original bill, Mills filed an amended bill, asking that they might be made parties and that their interest in the said real estate might be decreed to be sold. They filed their answer admitting that they were the holders of the mortgage of the 13th December, 1853, and alleging that the mortgage and decree of Gwyn, Reid & Taylor had also been assigned to them. The appellees were not made parties to these proceedings. A decree was passed for the sale of the said real estate, and one

Peregrine Davis became the purchaser; the sale was ratified, the purchase money was paid and distributed under the direction of said Court, after due notice to the creditors of Shackelford to file their claims in the cause; and the appellant derived his title to the land from Davis, the purchaser at the trustee's sale. In April, 1861, the appellees sued out a writ of *scire facias* upon their judgment, which was served upon the appellant, as *terre-tenant* of Shackelford, and at the trial two prayers were offered, one by the appellees and the other by the appellant; the former of which was granted and the latter rejected by the Court; and the judgment being against the defendant below, he appealed. The question, presented by both prayers, is whether or not the judgment of the appellees could be enforced against the land, of which Shackelford had died seized, and which was then in the possession of the appellant. It has been contended that a judgment creditor, not a party to the cause, is not bound to seek payment out of the proceeds of sale in the hands of the trustee, but that he may prosecute his lien against the property, after its conveyance to the purchaser; and the cases of *Duvall, and others, vs. Speed, and others,* 1 *Md. Chan. Dec.,* 229, and *Brooks vs. Brooke, and others,* 12 *G. & J.,* 307, were relied upon as decisive of this proposition. In each of these cases the judgment creditor held the prior lien, and not having been made a party to the cause, it was very properly decided that he might prosecute his lien against the land in the hands of the purchaser. The case before us is very different from either of these. The mortgage of Gwyn, Reid & Taylor, was prior to the judgment of the appellees, and conveyed the legal title to the land, and consequently the judgment of the appellees was a lien upon the mortgagor's equity of redemption only. The mortgage and decree having been assigned to Thompson, Stewart and Mathews, they stood in the place, and acquired all the rights and interest, of the assignors. They were then the holders of the legal title under a mortgage prior to the judgment of the appellees, were parties to the cause and their

interest in the land was decreed to be, and was, sold by the trustee. Under these circumstances the appellees were bound to seek payment of their judgment from the proceeds of sale in the hands of the trustee.

It has also been argued that the payment to Gwyn, Reid & Taylor, was a satisfaction and extinguishment of their mortgage and decree, and that the judgment of the appellees thereby became the prior lien upon Shackelford's land. It is true, as a general rule, that a payment of the money by one, whose duty it is to pay, extinguishes the mortgage; but there are exceptions even to this rule. Whether a payment will be considered a satisfaction and extinguishment or not, depends upon the interest and rights of third parties, and the intention of the parties to the transaction at the time of payment. 1 *Hilliard on Mortgages*, 535; *Walker vs. Stone, et al.*, 20 *Md. Rep.*, 198. In this case there was an express assignment of the mortgage and decree, and, from all the facts contained in the record, it was clearly the intention of all the parties to the transaction, that the mortgage and decree should not be extinguished, but should be kept alive and assigned, as they actually were, to Thompson, Stewart and Matthews.— From these views it follows that there was error in granting the appellees' prayer as well as in rejecting the prayer of the appellant; and, as it is finally settled that the appellees' judgment is not a lien upon the land in the appellant's possession, the judgment of the Court below must be reversed.

*Judgment reversed.*

(Decided 12th February, 1868.)