ELEANORA L. LEE, Terre-tenant of JOHN T. EVERS-
FIELD *vs.* WILLIAM H. EARLY, use of NEALE,
HARRIS & CO.

*Application of Payments—Scire Facias—Terre-tenant.*

In November, 1853, W. H. Early obtained a judgment against John T. Evers-
field for $538 and costs.  On appeal this judgment was affirmed by the
Court of Appeals at December Term, 1853, and was entered for the use of
Neale, Harris & Co. on the 17th of April, 1860.  On the 17th of May, 1860,
a *scire facias* was issued from the Court of Appeals and a *fiat* obtained
against Eversfield at April Term, 1861.  On the 18th of October, 1872, a
writ of *scire facias* was issued and made known to Mrs. E. L. Lee, seeking
to charge certain lands, held by her, of which Eversfield was seized at the
time the judgment was recovered against him.  Mrs. Lee pleaded first, that
she was not terre-tenant of Eversfield the defendant in the judgment, and,
secondly, that the judgment had been satisfied.  At the trial it appeared
that Mrs. Lee derived her title to the lands as follows: Eversfield had
executed three mortgages of the lands, one to M. C. and C. C. M., dated 22nd
of April, 1853, for $1400, which was prior to the original judgment, one
dated 4th of January, 1854, to C. C. M. for $1200, and another to the same
person, dated 14th March, 1854, for $5600.  All these mortgages were
assigned to W. W. on the 26th January, 1861, and by him were assigned
to G. F. on the 30th January, 1861, who filed a bill in equity on the 3rd of
November, 1861, against Eversfield the mortgagor, praying for a sale of the
lands to satisfy the *three* mortgages.  Afterwards, and before decree, he filed
an amended bill, setting forth that since the filing of the original bill, Evers-
field had sold a part of the mortgaged premises to C. C. M., who had paid a
part of the purchase money to Eversfield ; that there remained a balance
thereof due from the purchaser of $1520, with interest from the 9th of
December, 1862, which he was desirous to pay to the complainant, and
praying to have the sale to him confirmed, that he be directed to pay the
same to the complainant, and that the trustees to be appointed in the cause,
be directed to execute a deed of conveyance to C. C. M of the parcel of
land purchased by him.  An answer was filed by C. C. M. admitting the
facts as stated in the amended bill, and praying that a decree be passed as

prayed. Thereupon a statement signed by the solicitors of the complainant and defendant, respectively, was filed, showing the balance of the mortgage debt, the amount to be paid by C. C. M. having been credited thereon, and the times at which said balance was to be paid by instalments. On the 19th of February, 1863, a decree was passed, by consent, directing a deed to be made to C. C. M. upon his payment of $1520, balance of the purchase money due, and decreeing that the residue of the mortgaged premises be sold, in default of payment by the mortgagor of the several sums or instalments of the mortgage debts, at the times mentioned in the aforesaid statement. The decree was entered for the use of Mrs. Lee and W. J. B., administrators of Benj. Lee. The trustee sold the residue of the mortgaged premises on the 30th of November, 1869, to S. H. B., and the sale was finally ratified on the 21st of January, 1870. The purchaser not complying with the terms of sale, the property was resold on the 30th of September, 1871, to the same person, and the sale was finally ratified on the 24th of November, 1871. The purchaser again failing to comply with the terms of sale, another order of resale was passed, and on the 23rd of February, 1872, the property was sold to Mrs. Lee, the defendant, and on the 2nd of May, 1872, this sale was finally ratified, and the cause referred to the auditor, who stated an account, whereby after deducting costs, commissions, &c., the balance of purchase money in the hands of the trustee was awarded to the administrators of Benj. Lee, who were the assignees of the decree passed on the 19th of February, 1863; leaving a balance of $2186.26 due upon the decree, still unpaid. The report of the auditor was finally ratified on the 6th of December, 1872. Accompanying the report was a statement of the amount of the decree, with interest, deducting therefrom the various sums received thereon from the proceeds of grain and tobacco, in successive years from July, 1868, till August, 1871, inclusive. These sums were received under an agreement made by Eversfield with the administrators of Benj. Lee, on the 24th of March, 1868; whereby it was agreed that the proceeds of said crops should be paid over to them "in part payment of a mortgage on said lands which was assigned to them by a certain G. F., for which said administrators shall receipt to the trustees for the sale of said lands." This statement made by the auditor was also ratified on the 6th of December, 1872. The plaintiffs contended that the payment of $1520 made by C. C. M., on the 9th of December, 1862, and the moneys received from the crops should be first applied to the payment of the eldest mortgage debt; and if so applied, that the same had been satisfied and the lien thereof extinguished before the sale to S. H. B., on the 30th of November, 1869, and consequently that the sale to S. H. B. and the subsequent sale to the defendant, Mrs. Lee, were made subject to the lien of the judgment, which was prior in date to the second and third mortgages. HELD:

6                    v. 44.

1st. That the plaintiffs had no right to insist upon such application of payments; that they had been applied by Eversfield the mortgagor himself, as he had a right to do, in part satisfaction of the aggregate debt and interest due upon the three mortgages, and the decree recovered thereon.

2nd. That the effect of the purchase made by the defendant, Mrs. Lee, under the decree and the ratification thereof, was to vest in her a title which related back to the date of the first mortgage, free from the lien of the judgment upon which the *scire facias* was issued; and that she was not a *terre-tenant* of Eversfield so as to entitle the plaintiffs to a *fiat* against her.

APPEAL from the Circuit Court for Prince George's County.

The facts of the case are sufficiently stated in the opinion of the Court.

*Exception*—The plaintiffs offered three prayers, the first and third of which the Court rejected, the second as follows, was granted:

2. If the Court shall find from the evidence that there had been paid to George Forbes, and the administrators of Benjn. Lee in money by C. C. Magruder, and in the proceeds of crops raised on said land, as much as would equal the amount of principal and interest due on the first mortgage, and that sums to that amount or more, were paid to them before the first sale made to S. H. Berry, under the decree offered in evidence, then such sums should be treated as payments made by the mortgagor, applicable to the first mortgage debt, and said mortgage should be treated as having been satisfied, and that lien extinguished before the said sale to S. H. Berry, and no title to said land vested in Mrs. Lee under the subsequent sale to her, which would exclude the lien of the original judgment against John T. Eversfield set forth in the writs of *sci. fa.* in this cause.

The defendant Mrs. Lee offered five prayers, which the Court rejected. The fifth only, as follows, need be set out:

5. If the Court shall find from the evidence in the cause that the said John T. Eversfield executed the three mortgages offered in evidence, upon the real estate sought to be made liable in this case for the payment of the judgment upon which the *scire facias* issued, and that the said mortgages were not paid prior to the passage of the decree offered in evidence, and shall further find that a decree was passed in the cause of *George Forbes vs. John T. Eversfield,* in the Circuit Court for Prince George's County, sitting in Equity, for the sale of the said real estate to satisfy the said three mortgages offered in evidence, and that the defendant, Eleanora L. Lee, became the purchaser of a portion of the said real estate, under the said decree and order of resale offered in evidence, and that the said sale was duly reported to and ratified by the said Court, and that the said Eleanora L. Lee is in possession of the said real estate, and obtained title thereto under and by virtue of the said purchase under the said decree and order of resale, then the said real estate in the possession of the said Eleanora L. Lee is not liable for the payment of the said judgment, and she is not a terre-tenant of the said John T. Eversfield, so as to entitle the plaintiffs to a *fiat* against her.

To the granting of the plaintiffs' second prayer and the rejection of the defendant's prayers the defendant excepted. The Court adjudged that a *fiat* be extended in such case against John T. Eversfield, as also against Eleanora L. Lee as terre-tenant of said Eversfield. From these judgments Mrs. Lee appealed.

The cause was argued before BARTOL, C. J., STEWART. BOWIE, GRASON and MILLER, J.

*Daniel Clarke* and *John B. Brooke,* for the appellant.

The Court erred in granting the plaintiffs' second prayer. This prayer asserts the proposition that if the Court should find that the amount of money paid by C. C.

Magruder to George Forbes, and the proceeds realized from crops raised on the lands prior to the first sale to Samuel H. Berry, which took place on the 30th of November, 1869, equalled the amount of principal and interest due on the *first mortgage*, then these sums should be treated as payments made by the mortgagor applicable to the first mortgage, and the mortgage should be treated as having been satisfied, and the *lien extinguished* before the sale to Samuel H. Berry, and no title to said land vested in Mrs. Lee, under the subsequent sale to her which would exclude the lien of the original judgment against John T. Eversfield, set forth in the writs of *scire facias*.

The rule of law applicable to payments will be found to be settled by the cases of *Calvert vs. Carter*, 18 *Md.*, 73; *Gwinn vs. Whitaker*, 1 *Har. & Johns.*, 754; *McTavish vs. Carroll*, 1 *Md. Ch. Dec.*, 160; *Mitchell vs. Dall*, 4 *G. & J.*, 361.

Where a debtor pays money he has a right to make the application of the payment at the time of the payment.

By the statement and agreement upon which the decree was passed in the case of *Forbes vs. Eversfield*, the sum of $1520 was applied to the interest due on the three mortgages, and the Court had no right to make a different application, as was done by the prayer, of the said sum of $1520 to the first mortgage.

Applying the sum of $1520 to the interest due on the three mortgages in the relative proportions, as made by the agreement of the parties at the time when the payment was made, and as shown by the statement on which the decree was passed, and then applying all the amounts received from the proceeds of crops as contained in the auditor's statement down to the 30th of November, 1869, to the balance of interest due on the first mortgage and to the principal due on the first mortgage, it will be found by calculation that the first mortgage was not paid in full at the time of the sale. The only way in which the first

mortgage can be shown to be satisfied as of the time of the sale on the 30th of November, 1869, is by applying the sum of $1520 and all the proceeds of crops sold up to November 30th, 1869, to the principal and interest due on the first mortgage, which is clearly erroneous.

Conceding that there was no agreement as to the application of the proceeds of crops at the time they were sold, and that there is no evidence to show that any application was made by either of the parties at the time, and that the law must make the application, it is insisted that where a party is indebted on three mortgages all of which are due, and payments are made which are not more than sufficient to pay the interest due on the said mortgages, the law will apply the payments to the interest due on *all* the mortgages before applying any of the payments to the principal of the *first* mortgage. See *Gwinn vs. Whitaker*, 1 *H. & J.*, 754.

The principle of applying the payments to the oldest debt does not obtain except in cases where the interest is paid up on the whole indebtedness, and the law is called on to apply payments to the *principal* of several debts. Then the application of the payment is made to the oldest debt. *Allstan vs. Contee*, 4 *H. & J.*, 351; *Mitchell vs. Dall*, 4 *G. & J.*, 361.

The sum of $11,736 became due on decree, by the decree passed February 19th, 1863, and wherever a sum of money is due on decree or judgment, all payments made by the debtor, in the absence of express stipulation, are applied first to the interest on the same, and not to any part of the principal. *Gwinn vs Whitaker*, 1 *H. & J.*, 754.

The ratification of the auditor's report, and accounts A and B, operated as an application of the payments made from the proceeds of crops—both by the legal effect of the ratification of the said report and accounts, and also by reason of the fact that the same not being excepted to, it was an adoption by John T. Eversfield the debtor, and

Benjamin Lee's administrators, the creditors, of the application of the payments. *Ducker vs. Belt*, 3 *Md. Ch. Dec.*, 13 ; *White vs. The Okisko Co.*, 3 *Md. Ch. Dec.*, 214.

The appellant's fifth prayer is based upon the statement of the mortgage debt made by the auditor, which showed that from the time of the decree, down to the date of the resale of the 23rd of February, 1872, to Mrs. Lee, applying all the payments first to the interest due on the three mortgages there never was a time when the first mortgage was satisfied or any part of the principal due on the same was paid.    The authorities establish this mode of application of payments and proceeds of crops to be the correct one. The ratification of the auditor's report and accounts, without exception by either the debtor or creditor to this mode of applying the payments to the interest due and accruing on the three mortgages, was an adoption of this mode of applying the credits by the debtor and creditor themselves, and had the sanction of the Court which cannot now be disturbed.   See *Ducker vs. Belt*, 3 *Md. Ch. Dec.*, 13 ; *White vs. The Okisko Co.*, 3 *Md. Ch. Dec.*, 214.

If the Court found the facts set forth in the fifth prayer, then Mrs. Lee was not a terre-tenant of John T. Eversfield.    *Polk vs. Pendleton*, 31 *Md.*, 123.

*William H. Tuck,* for the appellees.

The theory of the plaintiffs' *second* prayer is, that if Forbes and the administrators of Lee, had, before the first sale to Berry, received from Magruder in money, and from the proceeds of crops, sums equal to or greater than the amount, with interest, then due on the *first* mortgage debt, then such sums should be treated as payments made by the mortgagor, applicable to the first mortgage debt, and that debt should be treated as having been satisfied, and the lien extinguished before that sale to Berry, and no title passed to Mrs. Lee under the subsequent sale to her, which would exclude the lien of the original judg-

ments, confessed by Eversfield, before he gave the second mortgage.

The dates of the liens stand thus: The first mortgage was in April, 1853; the appellees' judgments were rendered in November, 1853, and the other mortgages in January and March, 1854. If the first mortgage was paid after the decree, but before the first sale, that lien was discharged, and the trustees had no right to sell the property to satisfy that debt.

The agreement as to the application of the crops, does not provide for the payment of the debt as ascertained by the decree, but "in part payment of a mortgage on said lands which was assigned to them—the administrators of Lee—by a certain Geo. Forbes, for which they shall receipt to the trustees." Of course they could only sell so much of the land as might be necessary to pay the amount due at the time of sale, and if the mortgagor had been able to pay that amount and prevent a sale, they would have been obliged to accept it if tendered. If this agreement was not an application by the debtor to the first mortgage, the law would so apply these payments, because it was the elder lien, and because it was according to the justice of the case. *Allstan vs. Contee,* 4 *H. & J.,* 351; *McTavish vs. Carroll,* 1 *Md. Ch. Dec.,* 160; *Calvert vs. Carter,* 18 *Md.,* 73; *Neidig vs. Whiteford,* 29 *Md.,* 178; *Breckenridge's Heirs vs. Ormsby,* 1 *J. J. Marshall,* 257.

There is no reason in equity why the two judgments should not be paid any more than the mortgages. The last two mortgages were taken, subject under the law to the first mortgage and the judgments, according to priorities. If the appellees had been made parties, these judgments would have taken precedence of the last two mortgages, and would have been paid, and then the claim of Lee's estate would have remained so much less. Mrs. Lee, the purchaser, was the surviving administratrix of Dr. Lee. The land was sold to pay her claim; she never

complied with the terms of sale by making the cash payment, and giving her notes, according to the decree.

The appellees may not have been necessary parties to the cause, but they might have been brought in by the complainant, who afterwards assigned his claims to the administrators of Lee, and they might have made them parties. They took the assignment subject to all superior or intervening equities. If they became assignees after the decree, they did not thereby become absolutely entitled to the whole proceeds of sale, for the decree does not so declare, but requires the trustees to bring the money into Court to be disposed of under its direction.

The other creditors of Eversfield were not obliged to file their claims, they had a right to rest upon their liens, and the purchaser could only take the property subject to prior claims; this rule ought to be enforced here, because Mrs. Lee being claimant, if she intended to buy the land, ought to have had these judgment creditors brought in, as the record afforded knowledge of the existence of the liens. The decree did not provide for a notice to creditors; it does not appear that any was given, so that the case proceeded without any knowledge on the part of the appellees that it was pending, even if they had been under obligation to file their claims.

The fifth prayer of the appellant may be treated as the opposite of the plaintiffs' second. It asserts, that if the mortgages (all three,) were not paid before the passage of the decree, and that Mrs. Lee bought the land under the decree, and obtained title thereto under that purchase, then she is not a terre-tenant of Eversfield, so as to entitle the plaintiffs to *fiats* against her. This prayer is on the theory that the invervening judgments of the appellees were shut out by the decree, predicated, as it is said to have been, on all the mortgage debts.

BARTOL, C. J., delivered the opinion of the Court.

The writs of *scire facias* in these cases were issued at the instance of the appellees, and were made known to the appellant as *terre-tenant* of John T. Eversfield. By agreement, the two cases were tried together, and as they present the same questions, we shall speak of them as one case.

The defences relied on by the appellant are, first, that she is not *terre-tenant* of Eversfield, the defendant in the judgment, and *secondly*, that the judgment had been satisfied.

The facts material to be stated, are as follows:

At October Term 1853, the appellee, *Early*, obtained judgment against John T. Eversfield for $538.00, and costs. On appeal, the judgment was affirmed by the Court of Appeals at December Term 1855, and was entered for the use of Neale, Harris & Co., on the 17th day of April 1860. On the 17th day of May 1860, a *scire facias* was issued from the Court of Appeals, and a *fiat* obtained against John T. Eversfield, at April Term 1861. On the 18th day of October 1872, this writ of *scire facias* was issued, and made known to the appellant, seeking to charge certain lands, held by her, of which Eversfield was seized at the time the judgment was recovered against him. The appellant claims title to the lands, not as alienee of Eversfield, after the judgment, but claims to hold the same by adverse title, not subject to the lien of the judgment. Her title was derived in this way: Eversfield had executed three mortgages of the lands, as follows: One to M. Carroll and C. C. Magruder, dated *April* 22*nd* 1853, for $1400, (*this was before the original judgment.*) One dated *January 4th* 1854, to C. C. Magruder for $1200, and another to the same person, dated March 14th 1854, for $5600. All these mortgages were assigned to William Worthington on the 26th day of January 1861, and by him were assigned to George Forbes, on the 30th day of

January 1861, who filed a bill in equity on the 3rd day of December 1861, against Eversfield the mortgagor, praying for a sale of the lands to satisfy the *three* mortgages. Afterwards, and before decree, he filed an amended bill, setting forth that since the filing of the original bill, Eversfield had sold a part of the mortgaged premises to C. C. Magruder, who had paid a part of the purchase money to Eversfield, that there remained a balance thereof, due from Magruder, of $1520, with interest from December 9th 1862, which he was desirous to pay to the complainant, and praying to have the sale to him confirmed, that he be directed to pay the same to the complainant, and that the trustees to be appointed in the cause, be directed to execute a deed of conveyance to Magruder of the parcel of land so purchased by him. An answer was filed by Magruder, admitting the facts, as stated in the amended bill, and praying that a decree be passed as prayed.

Thereupon, the following statement was filed in the cause.

## STATEMENT.

GEORE FORBES

*vs.*

JOHN T. EVERSFIELD.

In the Circuit Court for Prince George's County, as a Court of Equity.

| | | |
|---|---:|---:|
| This amount *were* upon mortgage debt with interest from date to 9th Dec., 1862..... | $12,820 | 96 |
| By this sum to be paid by C. C. Magruder, for the land purchased by him............ | 1,520 | 00 |
| | $11,300 | 96 |
| Interest on balance, due 1st August, 1863... | 435 | 04 |
| | $11,736 | 00 |

The above amount to be paid in the follow-
ing instalments:

On 1st August, 1863 ............... $2934  00
On 1st August, 1864 ............... 2934  00
On 1st August, 1865 ............... 2934  00
On 1st August, 1866 ............... 2934  00
                                          $11,736  00

This—to certify, that the above is the statement upon
which the decree in this cause is predicated.

DANIEL CLARKE,
*Attorney for Complainant.*

SAMUEL H. BERRY,
*Solicitor for Defendant.*

On the 19th day of February 1863, a decree was passed
by consent, directing a deed to be made to Magruder, as
prayed, upon his payment of $1520, balance of purchase
money due, and decreeing that the residue of the mort-
gaged premises be sold, in default of payment by the
mortgagor of the several sums, or instalments of the mort-
gage debts, at the times mentioned in the foregoing state-
ment.

The decree was entered for the use of the appellant and
W. John Belt, administrators of Benjamin Lee.    Mr.
Clarke, the trustee, made sale of the residue of the mort-
gaged premises on the 30th day of November 1869, and
the sale was finally ratified on the 21st day of January
1870.    The purchaser not complying, a resale was ordered
and the land was resold on the 30th day of September
1871, and this sale was finally ratified on the 24th day of
November 1871.    The purchaser not complying, another
order for resale was passed, and on the 23rd day of Febru-
ary 1872, the property was sold to the appellant, and on
the 2nd day of May 1872, this sale was finally ratified,
and the cause referred to the auditor, who stated an

account, whereby after deducting costs, commissions, &c., the balance of purchase money in the hands of the trustee was awarded to the administrators of Benjamin Lee, who were the assignees of the decree passed on the 19th day of February 1863 ; leaving a balance of $2186.26 due upon the decree, still unpaid.

The report of the auditor was finally ratified, on the 6th day of December 1872. Accompanying the report was a statement of the amount of the decree, with interest, deducting therefrom the various sums, received thereon from the proceeds of grain and tobacco, in successive years, from July 1868, till August 1871, inclusive. These sums were received under an agreement made by John T. Eversfield, with the administrators of Dr. Benjamin Lee, on the 24th day of March 1868 ; whereby it was agreed that the proceeds of said crops should be paid over to them "*in* part payment of a mortgage on said lands which was assigned to them by a certain George Forbes, for which said administrators shall receipt to Samuel H. Berry and Daniel Clarke, trustees for the sale of said lands."

This statement made by the auditor was also ratified by the Court, on the 6th day of December 1872.

The appellant contends that having purchased under a decree, passed to enforce the payment of a mortgage prior in date to the judgment, she acquired a superior title, adverse to the judgment debtor, and free from the lien of the judgment.

There is no doubt of the correctness of the general proposition, that the title of a purchaser under a decree to enforce the payment of a mortgage debt, is not impaired or affected by the lien of a judgment rendered against the mortgagor subsequent to the mortgage.

This proposition is not denied by the appellees, but they seek to avoid its effect in the present case upon the ground that the payment of $1520, made by Magruder on the 9th day of December 1862, and the moneys received from the

crops, should be first applied to the payment of the first, or eldest mortgage debt ; and if so applied that the same had been satisfied and the lien thereof extinguished, before the sale to Berry on the 30th day of November 1869 ; and they maintain as a consequence, that the sale to Berry, and the subsequent sale to the appellant, were made subject to the lien of the judgment, which was prior in date to the *second* and *third* mortgages.

Have the appellees the right to insist upon such application of payments? The rule is well settled that " the debtor has the right, if he so elects, to make the application of payments in the first instance, and if he omits so to do, the creditor may make the appropriation ; but if neither make any appropriation, the law appropriates the payment to the earliest and generally the most onerous debt." *Neidig vs. Whiteford,* 29 *Md.,* 185.

In this case it appears from the evidence furnished by the proceedings in the Chancery case, to which we have referred, that the payment of $1520, made by Magruder was appropriated by the debtor, Eversfield, in part satisfaction of the aggregate debt due upon the three mortgages. This is shown by the statement, which formed the basis of the decree, and which was signed by Eversfield's solicitor. There can be no doubt, or question of the right of Eversfield, the mortgagor, to make that application. And in the same manner, under the agreement of March 24th 1868, the proceeds of the crops of grain and tobacco, were properly applied by the auditor in part satisfaction of the money due upon the decree. Such is our construction of the agreement, which though it provides that the proceeds of the crops shall be applied " in part payment of a *mortgage* on said lands," goes on to state "which was assigned to them by a certain George Forbes." Now this cannot be construed as referring to the *first* mortgage, or any other of the several mortgages ; but to the decree ; for it was the decree which had been assigned, not the

mortgage; besides the payments were to be made to the trustees, appointed under the decree.

It follows from what has been said, that the Circuit Court erred in granting the *second* prayer of the appellees, whereby it was ruled that the money paid by Magruder, and the money received from the proceeds of the crops should be first applied to the payment of the eldest mortgage. Whereas they had been applied by the mortgagor himself to the aggregate debt and interest due upon the three mortgages, and to the decree recovered thereon. It may be added that the appropriation of the proceeds of the crops, in part satisfaction of the *decree*, had been sanctioned and ratified by the Court of Chancery; and cannot be disturbed, or impeached by the appellees, in this collateral way.

It follows also that it was error to refuse the appellant's *fifth* prayer, which asserts the proposition, that the effect of the purchase made by the appellant, under the decree and the ratification thereof, was to vest in her a title, which related back to the date of the first mortgage, free from the lien of the judgment upon which the *scire facias* was issued; and that the lands so held by her are not liable for the payment of the judgment. Or in other words that she is not a terre-tenant within the meaning of the law. *Polk vs. Pendleton,* 31 *Md.,* 118.

As the decision of this point is conclusive of the case, it is unnecessary to consider the question raised by the other prayers of the appellant, as to whether the facts therein referred to, amounted in law to the payment and satisfaction of the judgment.

*Judgment reversed.*

(Decided 1st March, 1876.)