## MONTGOMERY TIRE SERVICE, INC. *v.* TOWSNER ET AL.

[No. 27, September Term, 1970.]

*Decided October 13, 1970.*

The cause was argued before HAMMOND, C. J., and MC-WILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*R. Edwin Brown* for appellant.

*James B. Berry, Jr.,* for appellees.

MCWILLIAMS, J., delivered the opinion of the Court.

High Performance Tires, Inc. (HP), was launched in the fall of 1967. It foundered in the spring of 1968. In midcourse it cajoled the appellant (Montgomery) into parting with about $25,000 worth of tires. Montgomery's attempt to salvage something out of the wreckage, unsuccessful below, provides the basis for this appeal. The narrow question presented arises out of the dismissal of its petition to enjoin both temporarily and permanently the foreclosure of a deed of trust on realty. How success in this regard might benefit Montgomery will be disclosed in our recital of the relevant facts.

While the record provides no specific information about HP, it seems reasonable to assume that it was formed at the behest of the appellee Edward R. Beisler, Jr. (Junior), in 1967 and that he was its principal if not its only stockholder. To assist Junior's venture into the tire business his father (Beisler), on 3 October 1967, handed him $10,-000 in cash, which appears to have found its way into the coffers of HP. On 29 February 1968 HP bought a quantity of tires from Montgomery. A part, perhaps all,

of the consideration therefor was evidenced by a confessed judgment note of HP for $24,751.01, co-signed by Junior and his wife Marilyn. On 5 April 1968 Junior and his wife conveyed their Prince George's County home to the appellees Towsner and Rabenovets, in trust, to secure the payment of a $10,000 note to Beisler and his wife Hilda. The interest was payable semi-annually; principal payments were to commence ten years later. The principal was the same $10,000 that had been transferred to Junior in October 1967. The note and the deed of trust were dated 2 April 1968; both were executed on 5 April; the deed of trust was recorded on 8 April. On 28 May 1968 Montgomery obtained a judgment by confession against HP, Junior and Marilyn in the amount of $14,021.57. In October 1968, having ordered the issuance of a writ of fieri facias, Montgomery instructed the sheriff to seize certain tires it had sold to HP but, says Montgomery, the sheriff was unable to make the levy because the tires had been hidden. In April 1969 the writ was reissued and the sheriff was directed to levy upon Junior's furniture and his equity (there was a first mortgage of $15,753.86) in the realty. Admission to the residence was refused but the levy upon the realty was made. On 10 December the sheriff, as directed, advertised his intention to sell the property at public sale on 14 January 1970. Towsner and Rabenovets, the trustees, published an advertisement on 25 December 1969 announcing their intention to foreclose the deed of trust and sell the property on 13 January 1970, the day before the sheriff's sale.

On 9 January Montgomery filed a "petition for ex parte relief and [an] injunction to stay [the] foreclosure pursuant to [Maryland] Rule W76." It prayed also a permanent injunction on the ground that the deed of trust was "null and void." It was null and void, said Montgomery, because Rabenovets, "a grantee and trustee * * * and a person beneficially interested in the grant," also a notary public, had attested the signatures of Junior and Marilyn, and had taken their acknowledgment. Moreover, it pointed out, he had taken the affidavit of Beisler and

Hilda in which they swore that they were "the parties secured" and that the consideration recited was "true and bona fide as therein set forth."

The trial judge, at the conclusion of a brief hearing held 12 January, found the $10,000 October transaction to have been a loan rather than a gift and, for aught disclosed by the evidence, free of any "indication * * * of * * * fraud." He rejected the argument that Rabenovets' acting both as trustee and notary nullified the deed of trust. Accordingly he dismissed Montgomery's petition. On the day following the trustees sold the property, subject to the first mortgage, to Beisler and Hilda for $6,-600, "they being at that price the highest bidders" therefor. Montgomery's sheriff's sale was called off. We were told at argument that since the sale there has been no further activity in the foreclosure case.

Whether Montgomery's petition "pursuant to Rule W76" was a proper invocation of that rule seems not to be before us. The question was not raised in this Court nor in the court below. Neither was it mentioned by the trial judge. Nevertheless, we think it appropriate, in the circumstances, to assume, without deciding, that Montgomery had sufficient standing to intervene.

Montgomery leans heavily on *United States Fidelity and Guaranty Co. v. Shoul*, 161 Md. 425 (1931), where one of the questions presented was whether a notary was "authorized to take the acknowledgment to the deed * * * in which she was named as the grantee." There a husband had conveyed to the notary who in turn conveyed to the wife. Both deeds were executed simultaneously; both were recorded on the day following. Judge Pattison, for the Court, said:

> "Mr. Tiffany, in his work on *Real Property*, says in volume 2 (2d Ed.), p. 1729: 'It is generally agreed that an officer who is beneficially interested in a transaction cannot take an acknowledgment.' This statement of law is in accord with the general authorities. To allow the

grantee in a deed who is beneficially interested in the grant to take the acknowledgment would be against public policy, and would practically defeat the real purpose of the law, which is to prevent the perpetration of fraud on the grantors, and to afford a reasonable assurance to those who deal on the faith of such instruments that they are genuine and represent bona fide transactions.

"In the case before us, the grantee took no beneficial interest in the grant, but was a mere conduit for the transfer of the title from the husband to the wife. It gave her no beneficial interest in the property, but only an instantaneous seisin, sufficient to convey it away again at once. *Hazleton v. Lesure*, 9 Allen (91 Mass.), 25. The grant to her and the grant by her are regarded as one entire act; the estate being merely in transitu. 'There is no interval of time which the law would recognize between the operation of the grant to her and the grant from her, they constitute one and the same transaction, just as if the two deeds had been embodied in one instrument.' *Notes on Titles*, p. 175. And, as we have said, the acknowledgment to the deed to the wife, which was the culmination of the transfer of the property to her from her husband, was taken by one not a party to the deed, but duly authorized to take acknowledgments to deeds or other conveyances.

"The fact that the acknowledgment to the deed to Elizabeth Miller, the grantee, who was but a mere conduit through which the estate, in which she had no beneficial interest, was passed to the wife, was taken by her, does not, in our opinion, have the effect of rendering the acknowledgment thereto defective, and the two deeds, the one from Doyle and wife to Elizabeth Miller, and the one from her to Mrs. Doyle, the

wife, when recorded, served as constructive notice of their execution. * * *." *Id.* at 428-29.

We think the case at bar has some significant distinguishing features. Rabenovets was something more than a mere conduit of title and, trustee's commissions considered, he can hardly be said to have been without a beneficial interest in the transaction. Moreover, the record suggests that he was the Beislers' accountant. But, while we think he has painted himself into a corner, we see no reason why Towsner should be disqualified from executing the trust reposed in him, even though the record identifies him as the attorney employed by Beisler and Hilda to prepare the deed of trust. While we seem never to have considered the question, it has arisen elsewhere in analogous circumstances. In *Darst v. Gall,* 83 Ill. 136 (1876), the acknowledgment of the grantors had been taken by one of the several trustees named as grantees. The court said:

> "The trustees named were empowered to act separately, and in the alternative — that is to say, if, by circumstances, one became disqualified or was unable to act — another might act. The acknowledgment was taken by Grove, one of the parties named as trustees. This, unquestionably, rendered the deed void as to him; but we fail to comprehend how it adversely affected the deed as to the other trustees. He and they had no community of interest, and his becoming disqualified had no tendency to disqualify them." *Id.* at 143.

A like result was reached in *Murray v. Tulare Irrigation Co.,* 120 Cal. 311, 49 P. 563, 52 P. 586 (1897), where it was said:

> "But where, as here, there are several grantees, each taking a separate and defined interest, the deed should be treated as if made separately to each of such grantees, and we see no reason why

* * * the acknowledgment should not be held good as to all of them except the party making it." 120 Cal. at 314.

*Rothschild v. Daugher,* 85 Tex. 332, 20 S. W. 142 (1892), is cited as authority for a contrary result but it seems to us that the facts of that case make it readily distinguishable from the case at bar.

But, argue the appellees, even assuming the invalidity of the acknowledgment Montgomery's petition must fail because the deed of trust created an equitable lien enforceable between the parties according to its terms, and because Montgomery's judgment, being but a general lien, must be subordinated to the superior equity of the prior specific lien of the deed of trust. If their argument is sound, and we agree that it is, then the coup de grace has been administered to Montgomery's petition. That this is the settled law is at once apparent upon reference to *Adams v. Avirett,* 252 Md. 566 (1969) ; *Pagenhardt v. Walsh,* 250 Md. 333 (1968) ; *Stebbins-Anderson Co. v. Bolton,* 208 Md. 183 (1955) ; *McHugh v. Martin,* 198 Md. 173 (1951) ; *Jackson v. County Trust Co.,* 176 Md. 505 (1939) ; *Caltrider v. Caples,* 160 Md. 392 (1931) ; and *Dyson v. Simmons,* 48 Md. 207 (1878).

While Montgomery must lose this battle it may yet win its war with HP and Junior. Its judgment seems unimpeachable and it may find other strings to its bow.

> *Order affirmed.*
> *Costs, other than the usual costs attendant upon foreclosure, to be paid by appellant.*