In re Jose F. De SOUZA, Debtor.

COMMUNITY DEVELOPMENT ADMINISTRATION (Loan Servicer is Maryland National Mortgage Corp.), Movant,

v.

Jose F. De SOUZA, Respondent.

Bankruptcy No. 91–43199–PM.

United States Bankruptcy Court, D. Maryland, at Rockville.

Dec. 4, 1991.

As Amended Jan. 31, 1992.

Deborah Curran, for movant, Community Development Admin.

Michael Wolff, for debtor-respondent.

Thomas Lackey, Chapter 13 Trustee.

Gregory Wilson, Chapter 7 Trustee.

## MEMORANDUM OF DECISION

PAUL MANNES, Chief Judge.

This case comes before the court on a motion for relief from stay filed by Community Development Administration ("Community"), the purchaser at a foreclosure sale and the holder of the note secured by the Deed of Trust pursuant to which the trustees conducted the sale. Community seeks to have the stay of 11 U.S.C. § 362(a) terminated so that it may obtain ratification of the sale in state court and record the foreclosure deed.

Respondent urges this court to review its previous rulings in *In re Edwards*, 62 B.R. 609 (Bankr.D.Md.1986); *In re Wallace*, 31 B.R. 64 (Bankr.D.Md.1983); and *In re Shirley*, 30 B.R. 195 (Bankr.D.Md.1983), in the light of *In re Konowitz*, 905 F.2d 55 (CA4 1990), and *In re Spencer*, 110 B.R. 144 (Bankr.D.Del.1989) (*"Spencer I"*). The latter judgment was reversed at 115 B.R. 471 (D.Del.1990) (*"Spencer II"*). The issue presented is in the context of foreclosure sales conducted under Maryland law, at what time must a debtor file a bankruptcy case in order to nullify the foreclosure sale?

11 U.S.C. Section 362(d) provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay ...

(1) for cause, including the lack of adequate protection of an interest in protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property....

The relevant facts are undisputed. Following debtor's default on payments due under a note secured by a deed of trust, a foreclosure sale was held on May 29, 1991. Community was the high bidder at the auction. On July 2, 1991, but before Community had obtained final state court ratification of the sale, debtor filed a bankruptcy case under Chapter 13 of the Bankruptcy Code, thereby activating the automatic stay of 11 U.S.C. § 362(a). Section 362(a)(3) prevents "any act to obtain possession of property of the estate or of

property from the estate or to exercise control over property of the estate." At that point, debtor held both legal title to and possession of the subject property.

Community pleads that cause exists to lift the stay in that the debtor possesses only naked legal title, equitable title having passed to Community at the foreclosure sale. Community also pleads the dire consequences of allowing a debtor to use the provisions of the Bankruptcy Code to save his property after the falling of the auctioneer's hammer at the foreclosure sale. The thrust of Community's argument is that if the potential debtor could nullify a foreclosure sale by filing a bankruptcy case at any time following a foreclosure sale prior to a final state court order of ratification and perhaps prior to the ouster of debtor from possession, then foreclosure sales would be rendered an inefficient market, discouraging the participation of all bidders save noteholders and scavengers typically appearing at tax sales.

The rights of the parties under Maryland law following the foreclosure sale were concisely set forth in the case of *Butler v. Daum,* 245 Md. 447, 226 A.2d 261, 264 (1967):

> The final claim of the appellants that they had a right to redeem the property at any time prior to the ratification of the sale is also without merit inasmuch as the right of redemption was divested by the valid foreclosure sale. Although the jurisdiction of equity does not become complete until the filing of the report of sale, nevertheless the sale in effect foreclosed the mortgage and divested the mortgagors of all right of redemption. *Union Trust Co. v. Biggs,* 153 Md. 50, 137 A. 509 (1927) and *Berry v. Skinner,* 30 Md. 567 (1869), and unless satisfactory proof is shown before final ratification that the sale should be set aside, which was not done in this case, all rights of the mortgagors in the land are deemed to have ceased to exist as of the date of the sale.

*See also Merryman v. Bremmer,* 250 Md. 1, 241 A.2d 558, 563–64 (1968). A more detailed explanation appears in the case of *Union Trust Co. v. Biggs,* 153 Md. 50, 55–56, 137 A. 509, 512 (1927):

> After the foreclosure sale the purchaser had the equitable interest in the land commensurate with that conveyed by the mortgage deed, and he was entitled to the legal title upon the final ratification of the sale by the court and the payment of the purchase money. The assignee, on the other hand, held the legal title in trust for the purchaser for the completion of the sale by its ratification, the satisfaction of the purchase price, and the delivery of the deed, subject to the right to enforce the payment of any of the purchase money by a resale at the risk of the buyer. So the whole beneficial ownership or estate of both the assignee and the mortgagor had passed from the land into the obligation of the purchaser to pay. In short, after the sale, equity regarded the property in the land as in the buyer, and the property or the price as in the assignee and mortgagor. It is true that the sale is incomplete until ratified by the court, and that the purchaser's title is an inchoate and equitable one from the day of sale until the final ratification, which, however, retroacts so that the purchaser is regarded by relation as the equitable owner from the time of the sale, and entitled to all the intermediate rents and profits of the estate. Although he thus becomes the substantial owner from the time of the sale and the property is at his gain if it appreciate and at his risk in case of loss by fire or through depreciation, yet, notwithstanding the purchase money be paid, the legal title of the purchaser does not vest until the deed to him is delivered, but upon its delivery, this deed is not effective merely from the day of its execution, but vests the property in the purchaser from the day of sale. It follows that, after the day of sale, the mortgagor's equity of redemption generally ceases to exist as an interest in land.

Thus, upon a successful bid at foreclosure, equitable title vested in Community, and all DeSousa retained was possession, bare legal title, and the right to object at the

ratification proceeding to irregularities in the conduct of the sale or the validity of the mortgage. This remaining interest in debtor nevertheless necessitates the filing of a motion for relief from the automatic stay. *See In re Pagoda International, Inc.*, 26 B.R. 18 (Bankr.D.Md.1982), and cases cited therein, for the proposition that the interest in the debtor remaining after severance of the title, albeit a scintilla, suffices to trigger the protection of § 362(a).

When the debtor filed this case under Chapter 13, the automatic stay operated to protect against "any act to obtain possession of property of the estate...." Because the ratification proceeding, that is necessary to reunite legal and equitable title in the purchaser after a foreclosure sale, had not yet occurred when DeSousa filed for bankruptcy, the stay protected the debtor from actions involving his legal title.

■ *In Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979), Justice Stephens spoke for a unanimous court in holding that specific property rights and assets of bankruptcy estates are state law considerations:

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.

Thus, the issue before the court is whether to depart from holdings by judges of this court for the past nine years that provide that under Maryland law if properties are to be saved from foreclosure, the debtor must file for bankruptcy before the auction takes place. *See In re Edwards*, 62 B.R. 609 (Bankr.D.Md.1986); *In re Wallace*, 31 B.R. 64 (Bankr.D.Md.1983); *In re Shirley*, 30 B.R. 195 (Bankr.D.Md.1983). These cases stand for the proposition that upon the falling of the auctioneer's hammer at the foreclosure sale, debtor is divested of all rights of redemption and is left with only bare legal title and the right under Maryland law to object to the ratification of the sale.

Debtor urges that in light of *In re Konowitz*, 905 F.2d 55 (CA4 1990), and *Spencer I*, the court should reexamine its prior holdings. Debtor cites *Spencer I* for the proposition that the bankruptcy filing not only stays further proceedings, but affords the court power to undo the auction sale so as to enable the debtor to propose a plan to save his home and reorganize his affairs.

■ Maryland, like Delaware, is a lien state. That is both a mortgage and a deed of trust secure the debtor's repayment of the indebtedness and the performance of other conditions. *Montgomery Tire Service, Inc. v. Towsner*, 259 Md. 192, 269 A.2d 572, 575 (1970). The holding that a bankruptcy filing stops the completion of a foreclosure sale is in accord with the practice in both states. In Maryland, unlike many other states, the mortgagor has no additional time after the sale to redeem property. After a foreclosure sale in Maryland, the mortgagor may have the sale set aside only if a technical objection is sustained. *Gordon on Maryland Foreclosures*, § 1.02 (2d ed. 1989).

This court finds the reasoning in *Spencer II* more persuasive, namely, that following a bankruptcy filing, the bankruptcy court has no power to undo a prefiling foreclosure sale and restore the equitable title to the legal title holder. *Spencer II* contains an excellent summary of general equitable principles on foreclosures in lien states such as Delaware and Maryland. The right of redemption and the right of foreclosure are coexisting and mutual rights. Such mutuality implies that the exercise of foreclosure rights, including the process of execution, extinguishes the equity of redemption. Consequently, after a foreclosure sale, both the equity of redemption and equitable ownership are extinguished.

The court therefore rejects DeSousa's argument that he retained an equity of redemption that has the capacity to subject Community's equitable ownership to defeasance.

Debtor also seeks comfort in the case of *In re Konowitz*, 905 F.2d 55 (CA4 1990),

that likewise involved a relationship of Maryland foreclosure law and bankruptcy intervention. *Konowitz,* however, has a critical distinction from the case at hand. In *Konowitz,* debtor's bankruptcy case was filed three days before the scheduled foreclosure sale. The bankruptcy filing was unknown to the mortgagee. The mortgagee proceeded with the scheduled sale. Upon notice of the bankruptcy filing, the mortgagee filed a motion under 11 U.S.C. § 362(d) to modify the automatic stay and to ratify the foreclosure sale *nunc pro tunc.* The mortgagee went on to construct an argument that under Maryland law[1], despite its unknowing violation of the automatic stay, it qualified for the safe harbor of 11 U.S.C. § 549(c). The Fourth Circuit disagreed. *In re Lampkin,* 116 B.R. 450 (Bankr.D.Md.1990) addresses the scope of § 549(c), that provides a very narrow window of exception to the general rule prohibiting postpetition transfers.

▪ *Konowitz* has no application to the case at hand. Unlike in *Konowitz,* the movant in the instant case is not seeking approval of an act done in violation of the automatic stay. To the contrary, it seeks relief from the stay only to go forward to ratify the stay in state court and finish the foreclosure process. The equitable title has been conveyed. Movant seeks to complete the transfer of legal title with relation back to the date of the foreclosure sale. The court finds that cause exists to lift the stay, namely, the need to reunite legal and equitable title in the hands of the foreclosure purchaser.

---

1. In Maryland both mortgages and deeds of trust are used to secure real estate based loans. For the purpose of this discussion, they are interchangeable. *See generally,* A. Gordon, *Gordon on Maryland Foreclosures,* Chapter 3, 2nd Edition (1985). Deeds of trusts are prevalent in the Washington metropolitan area. The Maryland Court of Appeals has described these as "Potomac mortgages." *Penn Gardens Section Two v. Melnick,* 256 Md. 72, 259 A.2d 520 (1969). *See also* Editor's Note to Maryland Rule of Procedure W77, Michie Company (1991), for a thorough discussion of the use of deeds of trust in place of mortgages as security devices.