672 A.2d 650

IA CONSTRUCTION CORPORATION

v.

Robert E. CARNEY, Jr.

No. 73, Sept. Term, 1995.

Court of Appeals of Maryland.

March 8, 1996.

**704**

Michael J. Wilson (Laws, Staruch and Pisarcik, on brief), Lemoyne, PA, for Petitioner.

David M. Meadows (Moore, Carney, Ryan and Lattanzi, L.L.C., on brief), Baltimore, for Respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RODOWSKY, Judge.

This case involves the mechanics' lien law (the Act), Md. Code (1974, 1996 Repl.Vol.), §§ 9–101 through 9–114 of the Real Property Article.[1]  In *IA Construction Corp. v. Carney*, 104 Md.App. 378, 656 A.2d 369 (1995), the Court of Special Appeals held that a mortgage lender

> "at the time he was granted legal title ... via mortgage in 1989, was a bona fide purchaser for value, and therefore took free and clear of [the mechanic's lien claimant's] right to establish a mechanics' lien when [the lender] subsequently obtained beneficial and equitable title to the subject property at the foreclosure sale."

*Id.* at 392, 656 A.2d at 376.  We granted the lien claimant's petition for certiorari, 339 Md. 445, 663 A.2d 1271 (1995), and we shall affirm, but for reasons that differ from those of the Court of Special Appeals.

The material facts of this case are undisputed.  They arise out of the attempted development by Birchwood Manor, Inc.

---

1.  Unless otherwise indicated all references to statutory sections are to Md.Code (1974, 1996 Repl.Vol.), Real Property Article.

(BMI) of a residential community in Harford County. Through various conveyances BMI had assembled a tract of land that was subdivided into sixty-five residential lots. One of the conveyances into BMI was by deed dated June 28, 1989 from the respondent, Robert E. Carney, Jr. (Carney). That deed recited a consideration of $135,000. That same day Carney took back a mortgage on the property that he had conveyed, securing $35,000, all due and payable on December 1, 1989. Both instruments were promptly and duly recorded. Three lots created out of the Carney conveyance, Nos. 59, 61, and 62, are the subject of the mechanic's lien claimed in this case.

The petitioner, IA Construction Corporation (IA), entered into contracts with BMI on July 9 and October 20, 1992 for construction and repair work on streets, curbs, and gutters. The last of the work is alleged to have been done on November 30, 1992. BMI did not pay IA which, on May 24, 1993, petitioned to establish a mechanic's lien in the amount of $27,269.[2]

Carney, on June 22, 1993, instituted foreclosure of the mortgage from BMI to him, and provided notice thereof to IA. We were advised by IA at oral argument that BMI had curtailed the principal of the Carney mortgage by $9,000 prior to foreclosure. At the foreclosure sale, held July 9, 1993, Carney bought in the property for $26,000. "IA concedes that it appears the foreclosure proceedings were correctly instituted and finalized." Brief for Petitioner at 13.

In the subject mechanic's lien action the Circuit Court for Harford County on July 20, 1993 held a show cause hearing under § 9–106(a) and Maryland Rule BG73.c, concluded that IA had established probable cause, and, by an order under § 9–106(b)(3) and Rule BG73.d.2, established an interlocutory mechanic's lien in the amount of $27,269 in favor of IA that was docketed August 10, 1993.

---

2. The petition, as amended, named as defendants others in addition to BMI and Carney, because there were mortgages on portions of the BMI subdivision other than that acquired from Carney.

The mortgage foreclosure sale to Carney was ratified September 8, 1993.[3] Rule W74.e requires an audit following mortgage foreclosure sales. Under the facts of the instant matter, the report of the auditor would have reflected that no money was available for distribution to lienors junior to Carney.

Carney moved for summary judgment in the subject mechanic's lien action after ratification of the mortgage foreclosure sale. He argued to the circuit court that, even if IA were to establish a final lien, it would not take priority over Carney's previously recorded mortgage. IA's response was that, when the foreclosure sale was held on July 9, 1993, IA was merely a general creditor of BMI, that the mechanic's lien would not be established until the entry of a "final" order, and that because IA had no interest in the property at the time, the foreclosure sale extinguished nothing. Further, IA argued that Carney could not be a bona fide purchaser within the contemplation of § 9–102(d). Because IA had instituted its mechanic's lien action before Carney instituted his mortgage foreclosure action, IA submitted that § 9–102(e) applied to prevent Carney from becoming a bona fide purchaser.

The two subsections of § 9–102 to which IA referred read as follows:

"(d) *Exemptions.*—However, a building or the land on which the building is erected may not be subjected to a lien under this subtitle if, prior to the establishment of a lien in accordance with this subtitle, legal title has been granted to a bona fide purchaser for value.

"(e) *Filing of petition constitutes notice to purchaser.*— The filing of a petition under § 9–105 shall constitute notice to a purchaser of the possibility of a lien being perfected under this subtitle."

---

**3.** In order for the sale to have been ratified, Carney, under Rules W74.e and BR6.b.3, was required to file an affidavit that included the statement that "he has not directly or indirectly discouraged anyone from bidding for the said property." Rule BR6.b.3(3).

Carney's reply was that, if by operation of § 9–102(e) he was on notice as of May 24, 1993, he was still protected by § 9–102(d) because, under the title theory of mortgages, Carney had become a bona fide purchaser on June 28, 1989 when he took the mortgage from BMI. IA rejoined by arguing that the statutory construction advocated by Carney gave no protection to mechanics who worked on property that was subject to a mortgage and would destroy the purpose of the Act.

The basis of the circuit court's grant of summary judgment for Carney is encapsulated in the following statement:

"It's undisputed that a valid foreclosure has taken place, and in my mind, as a matter of law, that defeats the Plaintiff's claim for a Mechanics Lien for work performed on the property prior to the foreclosure proceedings."[4]

In the circuit court's view it made no difference whether the mechanic's lien claim was "perfected" or "unperfected." The dispute as to whether Carney had actual knowledge that IA had not been paid by BMI was not considered to be a dispute of a material fact.

IA appealed to the Court of Special Appeals. In its brief to that court IA submitted that, contrary to the circuit court's holding, the mortgage foreclosure had not extinguished the mechanic's lien claim because nothing in the Act effected that result. In apparent anticipation of arguments by Carney, IA also contended that Carney was not a bona fide purchaser for a number of reasons, including *lis pendens*.

---

4. It is well settled in Maryland that an appellate court will ordinarily limit its review of the granting of summary judgment to those grounds relied upon by the trial court. Maryland Rule 8–131(a); *Blades v. Woods,* 338 Md. 475, 478, 659 A.2d 872, 873 (1995); *Davis v. DiPino,* 337 Md. 642, 647–48, 655 A.2d 401, 403–04 (1995); *Board of Trustees of the Maryland Teachers & State Employees Supplemental Retirement Plans v. Life & Health Ins. Guar. Corp.,* 335 Md. 176, 201–02, 642 A.2d 856, 868 (1994); *Gross v. Sussex Inc.,* 332 Md. 247, 254 n. 3, 630 A.2d 1156, 1159 n. 3 (1993); *Galola v. Snyder,* 328 Md. 182, 186 n. 1, 613 A.2d 983, 985–86 n. 1 (1992); *Finci v. American Casualty Co.,* 323 Md. 358, 387, 593 A.2d 1069, 1083 (1991); *Three Garden Village Ltd. Partnership v. United States Fidelity & Guar. Co.,* 318 Md. 98, 107–08, 567 A.2d 85, 89 (1989); *Geisz v. Greater Baltimore Medical Center,* 313 Md. 301, 314 n. 5, 545 A.2d 658, 664 n. 5 (1988).

In his four page brief to the Court of Special Appeals, Carney rested exclusively on extinguishment of the mechanic's lien by the ratification of the foreclosure sale, citing § 7–105(a) and *Southern Maryland Oil, Inc. v. Kaminetz,* 260 Md. 443, 272 A.2d 641 (1971). Section 7–105(a) provides that a mortgage foreclosure sale "after final ratification by the court and grant of the property to the purchaser on payment of the purchase money ... operates to pass all the title which the borrower had in the property at the time of the recording of the mortgage or deed of trust." *Southern Maryland Oil* held, *inter alia,* that a lease of realty that was subject to a mortgage was extinguished when the mortgage was later foreclosed. 260 Md. at 449–50, 457, 272 A.2d at 644–45, 649.

The Court of Special Appeals affirmed. *IA Constr. Corp.,* 104 Md.App. at 393, 656 A.2d at 377. It collapsed IA's no-extinguishment argument into IA's no-bona fide purchaser argument. *Id.* at 384–85, 656 A.2d at 372–73. The court considered the amount available from the mortgage foreclosure sale for distribution to junior lienors to be irrelevant, because it viewed IA's contention to be that "its *right* to establish a mechanics' lien against the foreclosed property has continued vitality after the foreclosure sale." *Id.* at 385 n. 4, 656 A.2d at 372 n. 4.

The court also rejected Carney's argument that the mortgage foreclosure had extinguished IA's claimed lien. *Id.* at 388–89, 656 A.2d at 374. Because *Southern Maryland Oil* involved the extinguishment of an estate by a mortgage foreclosure, the court construed § 7–105(a) to distinguish between estates on the one hand, and liens and encumbrances on the other. *Id.* From this the court concluded that, in the operation of § 7–105(a), the extinguishment of interests junior to a foreclosed mortgage was limited to later estates. *Id.* Consequently, the court held that § 7–105(a) "does not operate to extinguish liens and encumbrances incurred subsequent to the

mortgage." 104 Md.App. at 388, 656 A.2d at 374.[5]

The Court of Special Appeals then addressed the bona fide purchaser protection provisions of § 9–102(d). The court said that Carney had acquired legal title to the property when the mortgage was made in 1989, and equitable title when the mortgage was foreclosed. *Id.* at 390, 656 A.2d at 375. Thus, reasoned the court, if Carney were a bona fide purchaser when he acquired legal title, he would be protected by § 9–102(d). *Id.* IA submitted that Carney could not be a bona fide purchaser because he was on notice of a possible lien (1) by the filing of the petition to establish the mechanic's lien, and (2) by his knowledge, at least as alleged by IA, that BMI had not paid IA. *Id.* at 390–91, 656 A.2d at 375. Because both of these contentions involved events that "occurred *subsequent* to the passage of legal title to [Carney] via mortgage in 1989," the events "have no effect on [Carney's] status as a bona fide purchaser for value." *Id.* at 391, 656 A.2d at 376. The same analysis also disposed of IA's *lis pendens* contention. *Id.* at 393, 656 A.2d at 376–77.

We granted IA's petition for certiorari. In this Court, IA advances the arguments it made to the Court of Special Appeals. In addition, IA argues that

"the appealed decision can be taken to the logical conclusion that mortgaged property in Maryland can never be subjected to a mechanics' lien for work performed subsequent to the granting of the mortgage, although under contract with the record owner, since legal title passed by such granting and the mortgagee 'purchased' the property in good faith at that time."

Brief for Petitioner at 8. Carney reads the opinion of the Court of Special Appeals in the same way as IA. In this Court Carney "asserts that the status of the Mortgagee as a bona fide purchaser pursuant to 9–102(d) of the [Act] is not

---

5. In a footnote introduced with a *"[b]ut see"* signal, the Court of Special Appeals referred to § 9–108, discussed *infra.* 104 Md.App. at 388 n. 7, 656 A.2d at 374 n. 7.

the test upon which the case should be resolved." Brief for Appellee at 5.

## I

The interlocutory lien in favor of IA in this case was not established until after the property had been sold at foreclosure sale. "[T]he sale of the mortgaged premises . . . virtually foreclose[s] the mortgage and divest[s] all rights of redemption which had remained in the mortgagor until the sale." *Union Trust Co. v. Biggs,* 153 Md. 50, 55, 137 A. 509, 512 (1927). "After the foreclosure sale the purchaser had the equitable interest in the land commensurate with that conveyed by the mortgage deed, and [the purchaser] was entitled to the legal title upon the final ratification of the sale by the court and the payment of the purchase money." *Id.* "[A]fter the sale, equity regard[s] the property in the land as in the buyer." *Id.* at 56, 137 A. at 512.

> "The day of sale . . . [marks] the close of the period in which any creditor could acquire a lien upon the mortgagor's interest in the mortgaged land or equity of redemption by simply obtaining a judgment against the mortgagor, since a judgment lien upon real estate or an equitable interest in land only exists because it gives the judgment creditor the right to make his debt out of the land or equitable interest in land of the judgment debtor, with the correlative liability of such property of the debtor to be sold by way of execution for that purpose."

*Id. See also Pagenhardt v. Walsh,* 250 Md. 333, 243 A.2d 494 (1968); *Waring v. Guy,* 248 Md. 544, 237 A.2d 763 (1968); *Butler v. Daum,* 245 Md. 447, 226 A.2d 261 (1967); *Wethered v. Alban Tractor Co.,* 224 Md. 408, 168 A.2d 358, *cert. denied,* 368 U.S. 830, 82 S.Ct. 53, 7 L.Ed.2d 33 (1961); *Billingsley v. Lawson,* 43 Md.App. 713, 406 A.2d 946, *cert. denied,* 286 Md. 743 (1979), and *cert. denied,* 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980); *In re De Souza,* 135 B.R. 793 (Bankr. D.Md.1991); *In re Wallace,* 31 B.R. 64 (Bankr.D.Md.1983). This rule of law is similar to the rule under which a judgment against the vendor of realty, docketed after an equitable

conversion has occurred as the result of the contract of sale, does not effect a lien on the realty. *See Caltrider v. Caples*, 160 Md. 392, 153 A. 445 (1931).

In *York Roofing, Inc. v. Adcock*, 333 Md. 158, 634 A.2d 39 (1993), and in *Himmighoefer v. Medallion Indus., Inc.*, 302 Md. 270, 487 A.2d 282 (1985), we analogized to the lien of judgments in holding that the mechanics' liens sought in those cases did not attach to the property. In *Himmighoefer* we considered that a petition for a mechanic's lien, filed after the contract of sale, could give no greater rights to the lien claimant than would a judgment against the owner-vendor entered after the contract of sale. *Id.* at 278–81, 487 A.2d at 286–88. In *York Roofing* the lien claimants argued that the purchasers knew that the lien claimants had not been paid for work that was done after the contract of sale had been effected and before the deed had been delivered. *Id.* at 169, 634 A.2d at 44. We held that "that knowledge, without more, would be insufficient to expose [the purchasers] to a lien established after equitable title to the property had passed to them." *Id.* If the analogy to judgments applies under the facts of the instant matter, then the interlocutory lien did not attach to the property after Carney had purchased at the foreclosure sale.

The instant matter, however, is factually distinguishable from *York Roofing* and *Himmighoefer.* In the former case the petition to establish a mechanic's lien was filed after the contract of sale had been formed and the deed was delivered, *York Roofing*, 333 Md. at 161, 634 A.2d at 40, and in the latter, the petition to establish a mechanic's lien was filed after the contract of sale was formed, *Himmighoefer*, 302 Md. at 271, 487 A.2d at 282–83. In the matter now before us, the petition to establish the mechanic's lien antedated the foreclosure sale.

IA submits that this factual distinction produces a different legal result. IA's submission, in effect, is that under § 9–102(d) the mechanic's lien attaches to the improved property whether it is owned by the contracting owner or by a transferee who is not a bona fide purchaser. Here, IA argues, Carney

cannot be a bona fide purchaser because, under § 9–102(e), the previously filed petition to establish a mechanic's lien "constitute[d] notice to [Carney] of the possibility of a lien being perfected" under the Act. We shall assume, *arguendo*, that the interlocutory lien attached to the property after Carney had purchased at the foreclosure sale. Nevertheless, under the facts of this case, that lien, if any, would be junior to the lien of the Carney mortgage and, therefore, would be extinguished as a lien on the land no later than upon ratification of the foreclosure sale.

Approximately one month after the Court of Special Appeals filed its opinion in the instant matter, this Court decided *G.E. Capital Mortgage Servs., Inc. v. Levenson,* 338 Md. 227, 657 A.2d 1170 (1995). There, a mortgage lender had acquired a first lien by equitable subrogation to a released first mortgage. *Id.* at 242, 657 A.2d at 1177. We held that foreclosure of the senior lien, so acquired, extinguished junior liens obtained by judgments. *Id.* at 251, 657 A.2d at 1181. Thus, we do not agree with the Court of Special Appeals that a distinction is drawn between estates and liens intervening after the mortgage is created and before it is foreclosed.

*Garner v. Union Trust Co.,* 185 Md. 386, 45 A.2d 106 (1945), is also in point. In that case a first lien was held by a mortgagee on the fee simple interest in property. *Id.* at 388, 392–93, 45 A.2d at 107, 109. This priority resulted from the combination of (1) a mortgage that, at law, effectively encumbered only a leasehold interest, (2) an equitable lien on the reversionary interest when it was later acquired by the mortgagor, and (3) operation of the doctrine of merger. *Id.* at 392, 45 A.2d at 109. Subsequent to the merger, judgments were entered against the mortgagor. *Id.* When the mortgage was later foreclosed, the foreclosure purchaser unsuccessfully contended that the foreclosure title was not good and merchantable, absent releases of the judgments. *See id.* at 392–93, 45 A.2d at 109. This Court said:

"[T]he title of the purchaser at the foreclosure sale is not affected by these judgments, because they are not superior in right or lien to the equitable lien of the mortgage. The

law is clear that a judgment is a general lien relating to the time when it is recorded and is subordinate to the superior equity of a prior specific lien."

*Id. See also Leonard v. Groome,* 47 Md. 499 (1878); *Lee v. Early,* 44 Md. 80 (1876); *Brawner v. Watkins,* 28 Md. 217 (1868) (senior mortgage satisfied out of proceeds on sale under creditor's bill; junior judgment lien extinguished); E. Miller, Jr., *Equity Procedure* § 518 (1897).

■■■■■ These precedents concerning junior liens by judgments are applicable to junior mechanics' liens. The Act expressly recognizes that the ordinary priorities in judicial sales apply between mechanics' liens, as a class, and other liens. Section 9–108, captioned "Sale under foreclosure or execution of land against which lien established," reads as follows:

"If all or any part of the land or buildings against which a mechanic's lien has been established pursuant to this subtitle shall be sold under foreclosure or a judgment, execution or any other court order, all liens and encumbrances on such property shall be satisfied in accordance with their priority, subject to the limitation in the next sentence of this section. If the proceeds of the sale are insufficient to satisfy all liens established pursuant to this subtitle, then all proceeds available to satisfy each such lien shall be stated by the court auditor as one fund, and the amount to be disbursed to satisfy each lien established pursuant to this subtitle shall bear the same proportion to that fund as the amount of such lien bears to the total amount secured by all such liens, without regard to priority among such liens."

Here, where we deal with only one mechanic's lien, the second sentence of § 9–108 is not involved. The first sentence, however, makes it quite plain that the General Assembly contemplated that the ordinary rules relating to judicial sales would apply when a mortgage was foreclosed that was senior to a mechanic's lien.

■■■■■ Section 9–108 also defeats the suggestion permeating IA's argument that an interlocutory lien, or even a final

lien, that is not satisfied out of the proceeds on foreclosure of a senior mortgage somehow survives the mortgage foreclosure and continues to encumber the improved land after legal title has been conveyed to the mortgage foreclosure purchaser. Section 9–108 directs that on a mortgage foreclosure sale "all liens and encumbrances on such property shall be satisfied in accordance with their priority...." We construe § 9–108 to recognize extinguishment of a junior mechanic's lien on foreclosure of a senior mortgage to the same extent as a junior judgment lien would be extinguished, as to the specific property, on foreclosure of a senior mortgage. Thus, under the facts of this case we need not decide whether Carney became a bona fide purchaser at the foreclosure sale, within the meaning of § 9–102(d). Even if IA's interlocutory lien attached, the admittedly valid and ratified foreclosure sale would have extinguished it.

IA's argument also suggests that, even if an unsatisfied mechanic's lien is extinguished as a lien by the mortgage foreclosure, the right to claim a mechanic's lien survives ratification and can still be asserted against the land titled in the purchaser. But, in mechanics' liens actions, the claim and the lien are coextensive. Although IA, as a contractor, has a contract claim against BMI that survived the mortgage foreclosure, the mechanic's lien claim of IA, or of any subcontractor working on the same project, is a remedy that is limited to a lien on the specific, improved land. When that lien no longer exists, a claim for that lien no longer exists.

The foregoing analysis also answers, adversely to IA, its contentions based on *lis pendens*, or based on the language of § 9–102(e), to the effect that "[t]he filing of a petition under § 9–105 shall constitute notice to a purchaser of the possibility of a lien being perfected...." We assume, *arguendo*, that Carney was on notice of a possible mechanic's lien and that an interlocutory lien was established. Any such lien was extinguished, however, in the foreclosure proceedings. The provisions of § 9–108, dealing specifically with mortgage foreclosures, control over the general provisions of § 9–102(e).

For these reasons, the mandate of the Court of Special Appeals, affirming the judgment of the Circuit Court for Harford County, will be affirmed.

## II

For guidance in future cases, it is appropriate that we express our views on the *ratio decidendi* employed by the Court of Special Appeals in this case. That analysis considered a mortgagee to be a purchaser on the theory that the mortgage transferred legal title to the mortgagee. *IA Constr. Corp.*, 104 Md.App. at 389–92, 656 A.2d at 375–76. Further under that analysis, in this case, because the mortgage from BMI to Carney was made years before the work done by IA, Carney was a bona fide purchaser. *Id.*

We note that Judge Eli Frank, in his work, *Title to Real and Leasehold Estates and Liens* (1912), stated that "[t]he view generally held in equity is that the mortgage is a mere security for the debt, and that the title for most purposes, remains in the mortgagor." *Id.* at 231. The Act, which was effective before the procedural merger of law and equity, directs circuit court clerks to "docket the proceedings as an action in equity...." § 9–105(b). Judge Frank also observed in his work, at 238, that "[a]s a consequence of the influence of equity upon law, the mortgagor, while in possession and before default, is now at law regarded as the substantial owner of the property as against everybody, except the mortgagee."

Without fully reviewing the current extent or vitality of the title theory of mortgages in this State, it is sufficient to hold that, for purposes of the Act, the "owner" of mortgaged land is the mortgagor. "Owner" is defined in § 9–101(f) to mean "the owner of the land except that, when the contractor executes the contract with a tenant for life or for years, 'owner' means the tenant." In this definition, the exceptions from the conventional meaning do not include a mortgagee. Further, "contractor," as defined in § 9–101(d) for purposes of the Act, means "a person who has a contract with an owner."

The mechanic's lien is "for the payment of all debts ... contracted for work done for or about the building and for materials furnished for or about the building...." § 9–102(a). If, under the Act, a mortgagee is a purchaser of the property, then no contractor or subcontractor could obtain a mechanic's lien on mortgaged property, even as a second priority, unless the contractor had entered into an agreement with the mortgagee "for doing work or furnishing material, or both, for or about a building." § 9–101(c). This has not been the contemporaneous, practical construction of the statute. D. Albright, Jr. et al., *Mechanic's Liens and the Maryland Trust Fund Law*, at 18 (MICPEL 1991), states that the Act "grants a lien on the entire interest of the 'owner' of the property" with the exception noted above. There is no indication that practitioners under the Act ever considered "owner" to mean a mortgagee as of the time the mortgage was made.

## III

IA also argues that the instant matter should be remanded to the circuit court for the purpose of allowing IA to undertake discovery in order to develop facts supporting the allegations of its petition concerning Carney's knowledge of BMI's inability to pay. We set forth in the margin the allegations of the amended petition to establish a mechanic's lien.[6] The

---

**6.** The amended petition involved more property than the three lots with which this appeal is concerned, and it involved more parties defendant. The amended petition also utilized brackets to indicate matter deleted from the original petition and underlining to indicate new matter added. We have eliminated bracketed material and underlining in setting forth the allegations below.

"24. At all times set forth herein, Respondents Bank, BOB, Trustees, Carney and GMH had actual or constructive knowledge of the financial condition of BMI and its inability to pay for work performed by IA under the above-stated Proposal–Contracts.

"25. Notwithstanding such knowledge, said Respondents failed to give IA notice of the financial condition of BMI, the foreclosure proceedings, and the inability of BMI to pay for work performed.

"26. Notwithstanding such knowledge, said Respondents allowed IA and its subcontractors to perform the work described herein thereby increasing the value of the land sought to be liened.

thrust of the allegations is that Carney could not be a bona fide purchaser, so that the lien attached, even after the foreclosure sale. Inasmuch as we have held that, assuming the lien attached, it was extinguished when the sale was ratified, the timing and extent of Carney's knowledge of BMI's inability to pay are immaterial.

These allegations do not attempt to allege a form of deceit based on contracting with no present intention to perform. *Compare Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.,* 340 Md. 176, 197, 665 A.2d 1038, 1048 (1995); *Councill v. Sun Ins. Office,* 146 Md. 137, 150–51, 126 A. 229, 234 (1924) (jury could infer release procured by promise never intended to be performed).

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE PETITIONER.*

---

"27. For those reasons set forth Respondents, in their capacities as legal and/or equitable owners of the land described herein, are not bona fide purchasers for value."