**In re Mary Ellen DENNY, Debtor.**

**Homeside Lending, Inc., Movant,**

**v.**

**Mary Ellen Denny, Defendant.**

**Bankruptcy No. 99–2–0667–DK.**

United States Bankruptcy Court,
D. Maryland,
at Greenbelt.

Dec. 29, 1999.

William M. Savage, Shapiro & Burson, Fairfax, VA, for Homeside Lending, Inc.

Brett Weiss, P.C., Olney, MD, for Mary Ellen Denny.

Thomas Lackey, Bowie, MD, Chapter 13 Trustee.

### MEMORANDUM OF DECISION

DUNCAN W. KEIR, Bankruptcy Judge.

Before the court is a motion for relief from stay filed by Homeside Lending, Inc. ("Homeside") to allow ratification of the prepetition foreclosure sale of debtor's home. The issue is whether a foreclosure sale in Maryland is complete, for purposes of Section 1322(c)(1) of the United States Bankruptcy Code,[1] at the time the sale is conducted, or in the alternative, after the state court has entered an order ratifying the sale. For the reasons that follow, the court concludes the sale is complete "when the gavel falls," and that the debtor has no right thereafter to cure a default under Section 1322.

### FACTS

The facts in this case are undisputed. Following debtor's default on payments due under a note secured by a first deed of trust on her home, a foreclosure sale was held on August 25, 1999. The high bidder on the property was Thomas Pasidero. In accordance with Maryland law, a Report of Sale was filed on August 27, 1999. On September 9, 1999, prior to final ratification of the sale, however, debtor filed the instant bankruptcy causing the state court proceeding to be automatically stayed pursuant to Section 362(a). Homeside subsequently filed its motion for relief from the stay under Section 362(d) to allow completion of the ratification process and the transfer of legal title to Mr. Pasidero.

---

1. Hereinafter, all section citations not otherwise designated will be to the Bankruptcy Code, which is found at 11 U.S.C. §§ 101–1330.

## DISCUSSION

Homeside asserts that relief from the stay is justified because under Maryland foreclosure law, equitable title passed to the third party purchaser, Mr. Pasidero, "when the gavel fell." Under Homeside's theory, the debtor retains only the limited right to object to irregularities in the conduct of the sale or the validity of the mortgage, but no right of redemption or cure. Indeed, such was the conclusion of Chief Judge Mannes of this court in the opinion of *In re DeSouza*, 135 B.R. 793 (Bankr.D.Md.1991). Debtor responds, however, that *DeSouza* was effectively overruled by Section 1322(c) of the Bankruptcy Code, which was enacted pursuant to the Bankruptcy Reform Act of 1994, some three years after that decision. According to Debtor, Section 1322(c)(1) affords her a right of cure up until the sale is "final" under Maryland law, an event she maintains occurs when the sale is "ratified" by the state court.

Section 1322(c) provides in relevant part as follows:

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—

(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law. . . .

As authority for her position, Debtor relies on a line of New Jersey decisions which begin with the case of *In re Ross*, 191 B.R. 615 (Bankr.D.N.J.1996).[2] In an effort to interpret the then new Section 1322(c)(1), *Ross* found the phrase "sold at a foreclosure sale that is conducted in accordance

with applicable non-bankruptcy law," susceptible to two meanings, stating that:

[o]n the one hand, the preposition "at" in the phrase "sold at a foreclosure sale" might signify the intention of Congress to situate the termination point at a defined and certain event, i.e. the foreclosure auction. On the other hand, the phrase "that is conducted in accordance with applicable non-bankruptcy law" modifies "foreclosure sale," and requires resort to state law to determine the procedural regularity of the actual sale. The term "sold" might refer to the process employed in each state to complete a foreclosure sale.

*Ross*, 191 B.R. at 618. Because the court was unable to determine from the statutory language whether "sold at foreclosure sale" referred to the auction date, or some later date to be determined under state law, it consulted the legislative history of Section 1322, focusing on the House report which is set out below:

Section 1322(b)(3) and (5) of the Bankruptcy Code permit a debtor to cure defaults in connection with a chapter 13 plan, including defaults on a home mortgage loan. Until the Third Circuit's decision *Matter of Roach*, 824 F.2d 1370 (3d Cir.1987), all of the Federal Circuit Courts of Appeal had held that such right continues at least up until the time of the foreclosure sale. The *Roach* case, however, held that the doctor's [sic] right to cure was extinguished at the time of the foreclosure sale. This decision is in conflict with the fundamental bankruptcy principle allowing the debtor a fresh start through bankruptcy.

This section of the bill safeguards a debtor's rights in a chapter 13 case by allowing the debtor to cure home mort-

---

2. There is a split among the New Jersey bankruptcy courts as to when a debtor's right to cure his arrearage terminates under Section 1322(c)(1). The reasoning set out in *Ross*, that the right to cure terminates upon "completion" of the sale and physical transfer of the deed has been followed by in *In re Downing*, 212 B.R. 459 (Bankr.D.N.J.1997). A con-

trary line of cases, however, holds that a New Jersey debtor's right to cure under Section 1322 terminates on the actual date of the foreclosure sale. *See, In re Ziyambe*, 200 B.R. 790 (Bankr.D.N.J.1996); *In re Little*, 201 B.R. 98 (Bankr.D.N.J.1996); *In re Simmons*, 202 B.R. 198 (Bankr.D.N.J.1996); and *In re Hric*, 208 B.R. 21 (Bankr.D.N.J.1997).

gage defaults at least through completion of a foreclosure sale under applicable nonbankruptcy law. However, if the State provides the debtor more extensive "cure" rights (through, for example, some later redemption period), the debtor would continue to enjoy such rights in bankruptcy.

*Ross* at 618 (citing H.R.Rep. 103–835, 103rd Cong., 2nd Sess. 52 (Oct. 4, 1994); 140 Cong.Rec. 10752–01, 10769 (Oct. 4, 1994) U.S.Code Cong. & Admin.News 1994 pp. 3340, 3361). Focusing on the second paragraph in the quoted material, *Ross* concluded that Congress intended for debtor's right to cure to last until "completion" of a foreclosure sale conducted in accordance with state law. *Id.* at 618–19. Turning then to New Jersey law, the court determined that the sale was "complete," only "when the sheriff delivers the deed to the successful purchaser." *Id.* at 621.

■ This court disagrees with conclusion reached by *Ross*. Initially, the court finds no lack of clarity in Section 1322(c)(1) as drafted by Congress. Consequently, reliance on the statute's legislative history[3] is improper. *See, Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) ("When the words of a statute are unambiguous, the first canon of construction—that the court must presume that the legislature says what it means in the statute—also becomes the last canon of construction; judicial inquiry at that point is complete."); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240–41, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *Apex Express Corp. v. The Wise Co. (In re Apex Express)*, 190 F.3d 624, 641 (4th Cir.1999).

■ Giving effect to the plain language of the statute, this court finds that the phrase "sold at a foreclosure sale" takes its common and ordinary meaning and refers to the actual date of the sale. *See, McCarn v. WyHy Federal Credit Union*, 218 B.R. 154, 160 (10th Cir. BAP 1998) ("The language of section 1322(c)(1) is clear and unambiguous in establishing the date of the actual foreclosure sale as the cut-off for curing a mortgage default under section 1322(b) . . ."); *accord, In re Simmons*, 202 B.R. 198, 202–03 (Bankr. D.N.J.1997); *In re Hric*, 208 B.R. 21, 25–26 (Bankr.D.N.J.1997). There is simply no indication in the actual words of the statute which would support a contrary result. A finding that the date of the sale marks the termination of debtor's cure rights under Section 1322(c)(1) is also supported by common rules of statutory construction. Notably, the court must attempt to give meaning to each word in the statute. *See, e.g., Gustafson v. Alloyd Company, Inc.*,

---

**3.** Even were the court to consider the legislative history, however, it would conclude that history to be unhelpful. The New Jersey bankruptcy decisions that disagreed with *Ross* (cited *supra* note 1) also considered the legislative history. Those courts, however, focused on comments made by Senator Grassley in support of the Reform Act:

MR. GRASSLEY: Mr. President, I am pleased to support H.R.5116. This bill represents the collective wisdom of the Senate and the House concerning needed bankruptcy reforms. As an original cosponsor of the Senate-passed bill, S.540, I would have its enactment.

Nonetheless, compromise is the key to enact just about anything. . . .

· At this time, I would like to address a number of the issues covered by this legislation.

\*\*\*\*\*

Title III of the bill will assist homeowners. Some homeowners attempt to prevent their homes from being foreclosed upon, even though a bankruptcy court has ordered a foreclosure sale. There may be several months between the court order and the foreclosure sale. Section 301 will preempt conflicting State laws, and permit homeowners to present a plan to pay off their mortgage debt until the foreclosure sale actually occurs.

*In re Simmons*, 202 B.R. 198, 202 (Bankr. D.N.J.1996) (citing 140 Cong.Rec. S14462 (October 6, 1994)). Relying in part on Senator Grassley's remarks, the *Simmons* court concluded that the term "foreclosure sale" in Section 1322(c)(1) is most sensibly understood to mean the actual date of the sale. *Id.* While this court agrees with the *Simmons* interpretation, it does so without resort to Section 1322's legislative history.

513 U.S. 561, 574, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) ("the Court will avoid a reading which renders some words altogether redundant"); *Crestar Bank v. Neal (In re Kitchin Equip. Co.)*, 960 F.2d 1242, 1247 (4th Cir.1992) ("It is an axiom of statutory construction that courts are obliged to give effect, if possible, to every word used by the legislature"). Giving due weight to each word in the phrase "sold at a foreclosure sale," this court finds that the preposition "at" clearly indicates the specific event of the foreclosure sale. Further, while the phrase "conducted in accordance with applicable nonbankruptcy law" most naturally modifies the term "foreclosure sale," *see, National Coalition for Students with Disabilities Education and Legal Defense Fund v. Allen,* 152 F.3d 283, 288 n. 6 (4th Cir.1998) ("[It] is [a] fundamental canon of statutory construction that a qualifying phrase refers solely to its immediate antecedent"), it does not make that term ambiguous. Rather, again giving due emphasis to each word in the statute, this court finds that a debtor's right to cure survives until the date the property has been sold at a sale which complies with the procedural regularity afforded under applicable law. *See, In re Hric,* 208 B.R. at 25; *Simmons,* 202 B.R. at 203.

This court also agrees with *McCarn, supra* that finding the actual sale date as the termination point for that debtor's right to cure a mortgage default "is in accord with the policy of establishing a uniform set of laws governing consumer bankruptcy." *McCarn,* 218 B.R. at 160. Such a result strikes a balance between affording the debtor a right to avoid a pending foreclosure sale by filing a Chapter 13 petition, and the "legitimate economic interest in encouraging lenders to invest in home mortgages." *Id.,* (quoting pre-section 1322(c)(1) case, *Commercial Fed. Mortgage Corp. v. Smith (In re Smith),* 85 F.3d 1555, 1560 (11th Cir. 1996)).

Finally, although this court believes that it is clear from the text of Section 1322(c)(1) that the phrase "sold at a foreclosure sale" requires that debtor's right to cure ends on date of the actual sale, a contrary result would not be obtained by relying on "applicable nonbankruptcy law" to define the terminating event. In this case, as the property is located in Maryland, the foreclosure law of that state is the relevant nonbankruptcy law. Debtor has made no assertion that the sale was improperly noticed, or that there was some defect in the mortgage documents. Rather, she maintains that the sale is incomplete, because it has not yet been ratified. This fact is of no moment because under Maryland law, unlike other states, debtor has no additional time to redeem the property after the auction. *DeSouza* at 796. Instead, upon the successful bid by Mr. Pasidero at foreclosure, equitable title vested in him, and he, therefore, possessed the equitable right to legal title upon ratification and payment of the amount bid at auction. The trustee under the deed of trust retained bare legal title, subject to Mr. Pasidero's equitable title, and the debtor thereafter held only the right to object at the ratification proceeding to irregularities in the conduct of the sale or validity of the mortgage. *Id.* at 795–96.[4] *DeSouza* cites a detailed expla-

4. To the extent that the court in *DeSouza* found that bare legal title was held by the debtor after the auction, this court disagrees. In Maryland, legal title to the property is conveyed to the mortgagee under a mortgage or to the trustee(s) under a deed of trust, at the time of the delivery and recordation of the document. The borrower retains the equity of redemption and customarily there is reserved to the borrower in the document the right of possession until default. *See, Darnes-* *town Valley–WHM Ltd. Partnership v. McDonald's Corp.,* 102 Md.App. 577, 650 A.2d 1365, 1369 (1994) ("[T]here is usually incorporated into a mortgage of a leasehold estate ... a provision whereby the mortgagors, their personal representatives and assigns, may continue to hold and possess the mortgaged premises.... The effect of this agreement on the part of the mortgagee, which is known as a redemise, is to make of the mortgagor, in most respects, a tenant to the mortgagee.");

nation of this process from the case of *Union Trust Co. v. Biggs*, 137 A. 509, 512 (Md.1927), which bears repeating here:

> After the foreclosure sale the purchaser had the equitable interest in the land commensurate with that conveyed by the mortgage deed, and he was entitled to the legal title upon the final ratification of the sale by the court and the payment of the purchase money. The assignee, on the other hand, held the legal title in trust for the purchaser for the completion of the sale by its ratification, the satisfaction of the purchase price, and the delivery of the deed, subject to the right to enforce the payment of any of the purchase money by a resale at the risk of the buyer. So the whole beneficial ownership or estate of both the assignee and the mortgagor had passed from the land into the obligation of the purchaser to pay. In short, after the sale, equity regarded the property in the land as in the buyer, and the property or the price as in the assignee and mortgagor. It is true that the sale is incomplete until ratified by the court, and that the purchaser's title is an inchoate and equitable one from the day of sale until the final ratification, which, however, retroacts so that the purchaser is regarded by relation as the equitable owner from the time of the sale, and entitled to all the intermediate rents and profits of the estate. Although he thus becomes the substantial owner from the time of the sale and the property is at his gain if it appreciate and at his risk in case of loss by fire or through depreciation, yet, notwithstanding the purchase money be paid, the legal title of the purchaser does not vest until the deed to him is delivered, but upon its delivery, this deed is not effective merely from the day of its execution, but vests the property in the purchaser from the day of sale. It follows that, after the day of sale, the mortgagor's equity of redemption generally ceases to exist as an interest in land.[5]

See also, *IA Const.Corp. v. Carney*, 672 A.2d 650, 654–55 (Md.1996); *Pagenhardt v. Walsh*, 243 A.2d 494, 499 (Md.1968).

The effect of holding that Section 1322(c) affords to the debtor a post-auction opportunity to cure arrearages would be to destroy the equitable title of the purchaser that arises under Maryland law. That is, Debtor's argued for result would completely strip the auction purchaser of his equitable title by the mere filing of the bankruptcy case post-auction, without any further process or action afforded to the purchaser. The court finds nothing in the statute that would indicate the Congress intended such a summary divestment of the auction purchaser's property rights.

▪ "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply be-

*In re Bethesda Air Rights Ltd. Partnership*, 117 B.R. 202, 208 (Bankr.D.Md.1990). ("[T]he mortgagor is entitled to possession and the trappings of ownership until default, *subject to the rights of the mortgagee*.") (emphasis supplied). Upon default borrower's continued possession is by sufferance which may be ended by the pre-sale appointment of a receiver pursuant to provisions routinely contained in the mortgage or trust document. Upon the conclusion of the auction, the borrower's equity of redemption is terminated, subject to restoration if subsequent ratification is denied. *Merryman v. Bremmer*, 241 A.2d 558, 563–64 (Md.1968).

5. In the *Biggs* case, the debt was secured by a mortgage, as opposed to the deed of trust in the instant case. Both are commonly used in Maryland to obtain a consensual interest in real property to secure debt. Upon the granting of a deed of trust, legal title is held by trustee(s) appointed in that instrument, for the benefit of the holder of the debt. Upon the granting of a mortgage, legal title is held by the mortgagee/holder of debt, or any subsequent assignee of the mortgagee. No matter which form of document is used to secure the debt, equitable title passes to the purchaser when the gavel falls, with the holder of legal title retaining only bare legal title thereafter, subject to the previously discussed rights of the purchaser.

cause an interested party is involved in a bankruptcy proceeding." *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Nobelman v. American Savings Bank,* 508 U.S. 324, 328, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). As the debtor held no equitable or legal title under Maryland law on the date of the petition instituting this bankruptcy case, it follows that the bankruptcy filing did not create new property rights in the debtor, nor did it automatically destroy the property rights of the auction purchaser. Because the application of Debtor's interpretation of Section 1322(c) would require such an alteration in the parties' property rights without a clear expression of such intent by Congress, that interpretation cannot be sustained.

 This court nonetheless agrees with *DeSouza* that although debtor's remaining interest in the property is slight, such interest nevertheless requires the filing of a motion for relief from the automatic stay. *DeSouza,* at 796, (citing *In re Pagoda International, Inc.,* 26 B.R. 18 (Bankr.Md.1982) for the proposition that the debtor retains an interest after severance of equitable from legal title sufficient to trigger the protection of Section 362(a)). In this case, as in *DeSouza,* cause exists to lift the stay to allow the process of ratification (and Debtor's objections thereto, if any) to be completed and upon ratification the legal title to be reunited with the equitable title by settlement upon the auction contract. However, if the state court sustains any exception taken to ratification and thereby voids the foreclosure sale (consequently restoring debtor's equity of redemption), the automatic stay shall thereafter stay further actions to foreclose upon the property, pending further order by this court.

In sum, this court finds that Section 1322(c)(1) of the Bankruptcy Code affords the debtor an opportunity cure a default on her principal residence by filing a petition under Chapter 13 of the Bankruptcy Code before the foreclosure auction takes place. That section, however, does not change the result of *In re DeSouza.* A petition filed subsequent to the falling of the auctioneer's gavel simply comes too late.

An Order in conformity with this opinion shall be issued separately.